US DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAVID ELLIOT WERKING ) | |
| an Indiana Resident, ) | |
| Plaintiff, ) | Case No. 1:19-cv-276 |
| ) | Hon. Paul L. Maloney |
| vs. ) | |
| ) | |
| BETH EILEEN WERKING, ) | |
| a Michigan Resident, and ) | |
| PAUL MICHAEL WERKING, ) | |
| a Michigan Resident ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| POWERS & GREENGARD | VANDEBROEK LAW PLLC |
| Attorneys for Plaintiff | Attorneys for Defendants |
| Miles L. Greengard (P76812) | Anne M. VanderBroek (P81541) |
| The Carriage House | 17190 Van Wagoner Rd. |
| 509 Franklin Avenue | Spring Lake, MI 49456 |
| Grand Haven, MI 49417 | (616) 607-7522 (Phone) |
| (616) 512-5474 (Phone) | (616) 682-6109 (Fax) |
| (616) 607-7322 (Fax) | anne@vanderbroeklaw.com |
| mgreengard@powersgreengard.com | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, for its causes of action against Defendants, amends his prior complaint as a matter of right under Fed. R. Civ. Pro. Rule 15(a)(1)(B), and alleges that:

**PARTIES**

1. Plaintiff, David Werking, is an Indiana resident currently residing at 1715 E. Princeton Avenue, Muncie, Indiana. (Ex. 8 ¶ 2.)

2. Defendant Beth Werking ("B. Werking") is a Michigan resident whose primary residence is located at 11645 Lakeshore Drive, Grand Haven, Michigan. (Ex. 8 ¶ 3.)

3. Defendant Paul Werking ("P. Werking") is a Michigan resident whose primary residence is located at 11645 Lakeshore Drive, Grand Haven, Michigan. (*Id.*)

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. § 1332(a), as Plaintiff and Defendants are citizens of different states and the amount of damages in question exceeds seventy-five thousand dollars ($75,000).

5. Venue is proper in the Western District of Michigan, Southern Division, as the actions alleged below occurred primarily or exclusively in the Southern Division, and Defendants maintain their primary residence within the Southern Division.

## GENERAL ALLEGATIONS

5. Defendants invited Plaintiff to move into their house. (Exs. 9–14.)

6. On or about October 5, 2016, Plaintiff moved into Defendants' house. (Ex. 8 ¶ 4.)

7. Plaintiff brought with him some of his personal property (the "Property"). (Ex. 8 ¶ 5.)

8. Some of the Property was pornographic in nature. (*Id.*)

9. None of the Property was illegal in nature. (Ex. 8 ¶ 6.)

10. While living with Defendants, Plaintiff exchanged household chores in lieu of rent. (Ex. 8 ¶ 8.)

11. Plaintiff, at the request of local law enforcement, left Defendants' house on or about August 23, 2017. (Ex. 8 ¶ 9.)

12. After Plaintiff left their house, Defendants planned to return the Property to Plaintiff. (Ex. 1, 3 ¶ 6.)

13. On November 22, 2017, Plaintiff requested his Property from Defendant P. Werking. (Ex. 4.)

14. On or about December 16, 2017, Defendants delivered some of Plaintiff's Property. (Ex. 1, 3 ¶ 3.)

15. At such time, Plaintiff noticed that some of his Property was missing. (*Id.*)

16. Plaintiff asked Defendants about the missing Property, and Defendants stated "the items were destroyed." (*Id.*)

17. On January 1, 2018, Defendant P. Werking sent Plaintiff an e-mail stating,

> I don't think that you have been listening to me, so let me make this very clear. I do not possess your pornography. It is gone. It has been either destroyed or disposed of. I may well have missed a few items that are now in your possession but, at this point, if you don't have it, it is gone. Ditto for your sex toys and smutty magazines.

(Ex. 2.)

18. The e-mail continued: "We counted twelve moving boxes full of pornography plus two boxes of 'sex toys' as you call them. We began that day the process of destroying them and it took quite a while to do so." (Ex. 2.)

19. The e-mail continued: "Frankly, David [Plaintiff], I did you a big favor by getting rid of all this stuff for you." (Ex. 2.)

20. On or about February 23, 2018, Plaintiff contacted the Ottawa County Sheriff's Department. (Ex. 1, 1.)

21. On or about February 23, 2018, Deputy Jacob MacKeller spoke to Defendant B. Werking via telephone. (Ex. 1, 3 ¶ 5.)

22. Defendant B. Werking admitted that the Property was "destroyed and discarded." (Ex. 1, 3 ¶ 6.)

23. Defendant B. Werking further admitted that Defendants possessed some items of Plaintiff but that they were in no "hurry to return [the Property] due to David [Plaintiff] being upset with them [Defendants] about the destruction of his [Plaintiff's] pornography." (Ex. 1, 3 ¶ 7.)

24. On March 17, 2018, Defendant P. Werking sent Plaintiff an e-mail stating, "Believe it or not, one reason for why I destroyed your porn was for your own mental and emotional heath." (Ex. 3.)

25. Plaintiff maintained prices of most or all the Property in question. (Ex. 5.)

26. Plaintiff maintained records of most or all the Property in question. (Ex. 6.)

27. Plaintiff estimates the value of the Property in question to be twenty-five thousand five hundred fifty seven and 89/100 dollars ($25,557.89). (Ex. 5.)

28. On January 22, 2019 Plaintiff asked for repayment for the destroyed Property. (Ex. 7.)

## COUNT ONE

## STATUTORY CONVERSION

29. Plaintiff incorporates the preceding paragraphs.

30. Plaintiff had legally purchased the Property in question. (Ex. 5; Ex. 8 ¶ 5–6.)

31. Defendants knew, or had reason to know, that the property belonged to Plaintiff. (Ex. 1, 3; Exs. 2–4.)

32. By destroying the property, Defendants deprived Plaintiff of his Property. (Ex. 8 ¶ 10.)

33. Plaintiff was monetarily damaged by the destruction of his Property. (Ex. 6.)

34. Defendants found the Property objectionable. (Exs. 1–3.)

35. Defendant P. Werking thought the Property had a negative impact on their son, Plaintiff. (Exs. 2–3.)

36. Defendant P. Werking thought the Property would continue to have a negative impact on their son, Plaintiff. (*Id.*)

37. Defendant B. Werking did not want the Property in her house. (Ex. 1.)

38. Defendant B. Werking did not want to transport the Property to Indiana. (Ex. 1.)

39. Defendants converted the Property to their own use through the destruction of it. (Exs. 1–3.)

40. Defendants retained some items of Plaintiff (the "Sex Toys").

41. Plaintiff had previously requested the return of the Sex Toys. (Exs. 7–8.)

42. Defendants did not want to transport the Property to Indiana.   (Ex. 1.)

43. Defendants converted the Property to their own use by retaining the property.

44. The elements of Michigan's statutory conversion statute, Mich. Comp. Laws § 600.2919a(1)(a) are met.


Plaintiff requests that this court enter judgment in its favor and against Defendants as follows:

a.  Award Plaintiff treble damages under Michigan's statutory conversion statute, Mich. Comp. Laws § 600.2919(a)(1) in the amount of seventy-six thousand six hundred seventy-three and 67/100 dollars ($76,673.67).

b.  Award Plaintiff the costs and attorney fees incurred in connection with this action under Michigan's statutory conversion statute, Mich. Comp. Laws § 600.2919(a)(1).

c.  Award Plaintiff such other and different relief as this court deems warranted.

POWERS & GREENGARD

Dated:  May 22, 2019  /s/ Miles L. Greengard

Miles L. Greengard (P76812)
Powers & Greengard
Attorneys for Plaintiff
The Carriage House
509 Franklin
Grand Haven, Michigan 49417
616-350-8760
mgreengard@powersgreengard.com