US DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ELLIOT WERKING                )
an Indiana Resident,                )
      Plaintiff,                   )        Case No. 1:19-cv-276
                              )        Hon. Paul L. Maloney
vs.                                 )
                              )
BETH EILEEN WERKING,                )
a Michigan Resident, and            )
PAUL MICHAEL WERKING,               )
a Michigan Resident                 )
                              )
      Defendants.                  )

---

POWERS & GREENGARD
Attorneys for Plaintiff
Miles L. Greengard (P76812)
The Carriage House
509 Franklin Avenue
Grand Haven, MI  49417
(616) 512-5474 (Phone)
(616) 607-7322 (Fax)
mgreengard@powersgreengard.com

VANDEBROEK LAW PLLC
Attorneys for Defendants
Anne M. VanderBroek (P81541)
17190 Van Wagoner Rd.
Spring Lake, MI 49456
(616) 607-7522 (Phone)
(616) 682-6109 (Fax)
anne@vanderbroeklaw.com

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 56**

# Table of Contents

Table of Authorities ............................................................................................................................ i

Statement of Facts .............................................................................................................................. 1

Argument ............................................................................................................................................. 1

    1.   Introduction ............................................................................................................................. 1

    2.   Standard of Review ................................................................................................................ 1

    3.   Defendants' Destruction and Conversion of the Property Meets the Aroma Wines Standard for "Own Use." ......................................................................................................................... 2

        a.   Aroma Wines Background ............................................................................................. 3

        b.   The Michigan Supreme Court's Ruling in Aroma Wines .......................................... 4

        c.   Defendants Destroyed the Property and Admit to Common-Law Conversion. ................................... 5

        d.   Defendants Found the Property Objectionable. ....................................................... 7

        e.   Defendants Destroyed the Property for their Son's Benefit. .................................. 11

        f.   Conclusion ...................................................................................................................... 12

    4.   Defendants Lack Other Defenses. .................................................................................... 13

        a.   Introduction .................................................................................................................... 13

        b.   Detention of Property, Later Returned, Constitutes Conversion ........................ 13

        c.   Both Defendants Are Liable for Destruction of the Property. .............................. 14

        d.   Conclusion ...................................................................................................................... 15

    5.   Defendants Failed to Discuss Lack of Subject Matter Jurisdiction. ........................... 15

    6.   Plaintiff's Amended Filings Address Any Issues Raised by Defendants. ................... 19

Conclusion ........................................................................................................................................ 20

# Table of Authorities

## Cases

Alken-Ziegler, Inc v. Hague, 767 N.W.2d 668 (Mich. Ct. App. 2009) .................................................................. 17

Aroma Wines & Equipment, Inc. v. Columbian Distribution Services, Inc., 844 N.W.2d 727 (Mich. Ct. App. 2013) .................................................................. 3, 17

Aroma Wines & Equipment, Inc. v. Columbian Distribution Services, Inc., 871 N.W.2d 136 (Mich. 2015) .................................................................. passim

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .................................................................. 2, 14, 20

Aspen Am. Ins. Co. v. Interstate Warehousing, Inc, Case No. 1:14-CV-383, 2019 U.S. Dist. LEXIS 40027 (N.D. Ind. Mar. 13, 2019) .................................................................. 10

Ass'n. of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545 (6th Cir. 2007) .................................................................. 2, 14, 20

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .................................................................. 2, 14, 20

Bush v. Hayes, 282 N.W. 239 (Mich. 1938) .................................................................. 15

Central Transp., Inc. v. Fruehauf Corp., 362 N.W.2d 823 (Mich. Ct. App. 1984) .................................................................. 13

Charvat v. GVN Mich., Inc., 561 F. 3d 623 (6th Cir. 2009) .................................................................. 16, 17

Conley v. Gibson, 355 U.S. 41 (1957) .................................................................. 2

Crandall Office Furniture, Inc. v. Carroll, No. 335746, 2018 Mich. App. LEXIS 65 (Ct. App. Jan. 11, 2018) 19

Department of Agriculture v. Appletree Marketing, 779 N.W.2d 237 (Mich. 2010) .................................................................. 17

Dumm v. Brown, No. 336344, 2018 Mich. App. LEXIS 1591 (Mich. Ct. App. Apr. 17, 2018) .................................................................. 9, 20

Goodwin v. City of Detroit, No. 341239, 2018 Mich. App. LEXIS 3772 (Mich. Ct. App. Dec. 27, 2018) ...... 10

Grammer Indus., Inc. v. Beach Mold & Tool, Inc., Case No. 15-cv-12694, 2019 U.S. Dist. LEXIS 68210 (E.D. Mich. Apr. 23, 2019) .................................................................. 19

Health One Med. Ctr. v. Bristol-Myers Squibb Co., Case No. 16-cv-13815, 2017 U.S. Dist. LEXIS 110285 (E.D. Mich. July 17, 2017) .................................................................. 15

Howard v. National City Mortgage, No. 323118, 2016 Mich. App. LEXIS 24 (Ct. App. Jan. 12, 2016).... 16, 17

Human Rights Defense Center v. Bezotte, Case No. 11-CV-13460, 2017 U.S. Dist. LEXIS 48817 (E.D. Mich. Mar. 31, 2017) .................................................................. 11

Hunt v. Hadden, 127 F. Supp. 3d 780 (E.D. Mich. 2015) .................................................................. 18

Jay Dee Contrs. v. Fattore Const. Co., 293 N.W.2d 620 (Mich. Ct. App. 1980) .................................................................. 14

Kreiter v. Nichols, 28 Mich. 496 (1874) .................................................................. passim

Lansing Ice & Fuel Co. v. Smith, No. 328648, 2017 Mich. App. LEXIS 571 (Ct. App. Apr. 11, 2017) ..... 17, 18

LMT Corp. v Colonel, LLC., No. 294063, 2011 Mich. App. LEXIS 700 (Ct. App. Apr. 19, 2011) .................................................................. 17

Magley v. M & W Inc., 325 Mich. App. 307 (Ct. App. 2018) .................................................................. 11, 12

Maycroft v. Jennings Farms, 176 N.W. 545 (Mich. 1920) .................................................................. 13

Mobiletech Automotive, LLC v. Crystal Clean Automotive Detailing, LLC., No. 324315, 2016 Mich. App. LEXIS 292 (Ct. App. Feb. 16, 2016) .................................................................. 18, 19

Moore v. Andrews, 168 N.W. 1037 (Mich. 1918) .................................................................. 11

New Props., Inc. v. George D. Newpower, Jr., Inc., 762 N.W.2d 178 (Mich. Ct. App. 2009) .................................................................. 17

Pamar Enters., Inc. v Huntington Banks, 580 N.W.2d 11 (Mich. Ct. App. 1998) .................................................................. 13

Poly Bond, Inc. v. Jen-Tech Corp., No. 290429, 2010 Mich. App. LEXIS 1454 (Ct. App. July 27, 2010) ....... 17

Prime Fin. Servs. LLC v. Vinton, 761 N.W.2d 694 (Mich. Ct. App. 2008) .................................................................. 15

Puente v. State Farm Lloyds, Civil Action No. B-15-190, 2016 U.S. Dist. LEXIS 57139 (S.D. Tex. April 29, 2016) .................................................................. 16, 17

Saint Paul Mercury Indem. Co. v Red Cab Co., 303 U.S. 283 (1938) .................................................................. 16, 19

Sutter v. Ocwen Loan Servicing, LLC, No. 320704, 2016 Mich. App. LEXIS 1043 (Ct. App. May 24, 2016) 13, 18, 19

Tierney v. HSBC Consumer Lending Mortgage Services, Inc., No. 16-cv-11379, 2017 U.S. Dist. LEXIS 62157 (E.D. Mich. Apr. 25, 2017) ........................................................................................................... 7

Trail Clinic, P.C. v. Block, 319 N.W.2d 638 (Mich. Ct. App. 1982) ................................................. 15

Tyson v. Sterling Rental, Inc., 836 F.3d 571 (6th Cir. 2016) ............................................................ 17

Willis v. Ed Hudson Towing, Inc., 311 N.W.2d 776 (Mich. Ct. App. 1981) ...................................... 12

## Statutes

28 U.S.C. § 1332 .......................................................................................................................... 15, 16, 20

Mich. Comp. Laws § 600.2919a (2019) ........................................................................................... passim

## Other Authorities

18 Am. Jur. 2d Conversion § 136 ......................................................................................................... 14

90 C.J.S. Trover and Conversion § 31 ................................................................................................. 12

Adam D. Pavlik, Statutory Conversion and Treble Damages: Puzzles of Statutory Conversion, Mich. B. J., Mar. 2014 ........................................................................................................................................ 17, 18

## Rules

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 15, 19, 20

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1, 2, 19

Fed. R. Civ. P. 15 ..............................................................................................................................1, 20

Fed. R. Civ. P. 408 ............................................................................................................................... 16

## Statement of Facts

Plaintiff moved in with his parents and brought with him his personal property (the "Property"), some of which was pornographic in nature.  (Pl.'s Ex. 8 ¶ 5.)  Plaintiff was eventually asked by law enforcement to leave the residence after a domestic dispute with his father, Defendant Paul Werking. (Ex. 8 ¶ 9.)  After leaving, Plaintiff asked Defendants to return the Property.  (Pl.'s Ex. 4.)  Defendants, however, had already destroyed the Property due to their negative views of pornography.  (Pl.'s Exs. 1–3.)  Plaintiff eventually brought suit in this court under a theory of statutory conversion. (Pl.'s Compl.)

Defendants filed their Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.  (Defs.' Mot. Summ. J., ECF No. 5-2; Defs.' Br. Supp. Summ. J., ECF No. 5-2.) Plaintiff amended his filings under Fed. R. Civ. P. 15 and now brings this Brief in Opposition.

## Argument

### 1.    Introduction

Defendants' Brief in Support of Motion for Summary Judgment relies heavily on the court's findings in Aroma Wines & Equipment, Inc. v. Columbian Distribution Services, Inc., 871 N.W.2d 136 (Mich. 2015). Unfortunately for Defendants, they grossly misapply and mischaracterize the findings of the court in Aroma Wines. A thorough examination of Aroma Wines, subsequent Michigan case law, the pleadings submitted by Plaintiff, and other common-law decisions relating to conversion, both common law and statutory, will lead this Court to the inexorable conclusion that Defendants destroyed the Property for their own use.  Indeed, Defendants' citation to Aroma Wines should lead this Court to rule in Plaintiff's favor on the underlying action as a matter of law rather than to grant Defendants' Motion to Dismiss.

### 2.    Standard of Review

The proper standard of review for Defendants' Fed. R. Civ. P. 12(b)(6) motion was outlined extensively by the Sixth Circuit Court of Appeals in Ass'n. of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545 (6th Cir. 2007). The court stated,

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964–65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Id. (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Twombly, 550 U.S. at 563.

Ass'n. of Cleveland Fire Fighters, 502 F.3d at 548 (quoting and citing often Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). The Supreme Court otherwise summarized that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

In the instant action, given Defendants' admission of destroying the Property, as well as the findings of the Michigan Supreme Court in Aroma Wines, 871 N.W.2d 136, and subsequent case law, it is clear under standards adopted in Iqbal, Twombly, and Ass'n of Cleveland Fire Fighters that Plaintiff's original and amended complaint both should survive a Rule 12(b)(6) motion to dismiss.

**3.      Defendants' Destruction and Conversion of the Property Meets the Aroma Wines Standard for "Own Use."**

2

<u>*a.*</u>        <u>*Aroma Wines Background*</u>

Given the central role <u>Aroma Wines</u>, 871 N.W.2d 136, plays in both parties' briefs, the facts of the case merit discussion.   Aroma was a wine importer and distributor, whereas Columbian Distribution operated warehouses. <u>Aroma Wines</u>, 871 N.W.2d at 138. Aroma rented climate-controlled space to store wine from Columbian.  <u>Id.</u>  Aroma eventually fell behind on payments to Columbian.  <u>Id.</u>  While the parties disputed why Aroma's wine was moved, both parties stipulated that the wine was moved, at least temporarily, from a climate-controlled warehouse to a non-climate-controlled warehouse.   <u>Id.</u>   Aroma subsequently claimed that its wine's salability was destroyed due to exposure during the movie. <u>Id.</u> at 139. Aroma eventually sued under a theory, amongst other claims, of statutory conversion. <u>Id.</u>

At trial, the circuit court ruled in favor of Columbian's motion for a directed verdict on the statutory conversion claim. <u>Id.</u> The circuit court stated that "'one would have to drink [the wine] or perhaps sell it' to use it, and granted Columbian's motion for a directed verdict on Aroma's statutory conversion claim." <u>Id.</u> Aroma appealed the directed verdict on the statutory conversion count to the court of appeals on the narrow definition of "use."[1] <u>Id.</u> The court of appeals reversed the lower court's narrow definition of "use" and its decision, holding,

> "[D]rinking or selling the wine are not the only ways that [Columbian] could have employed [Aroma's] wine to its own purposes." Because Aroma "presented some evidence to support its theory that [Columbian] filled the temperature-controlled storage space that [Aroma's] wine was moved out of with other customers' products," and because Columbian's claim that it was engaged in an expansion project "itself could be considered an act of employing the wine to [its] own purposes," Columbian was not entitled to a directed verdict. Rather, the panel concluded that "[i]f a jury believed the evidence showing that [Columbian] moved [Aroma's] wine for its own purposes—whether it be to sell the space to other customers or

---

[1] The court of appeals opinion can be found at <u>Aroma Wines & Equipment, Inc. v. Columbian Distribution Services, Inc.</u>, 844 N.W.2d 727 (Mich. Ct. App. 2013).  Given the Michigan Supreme Court's controlling opinion, unless otherwise noted, all references are to the Michigan Supreme Court's decision.

> complete a construction project—or that it used the wine as leverage against [Aroma], it could have determined that [Columbian] converted the wine to its own use."

Id. at 139–40 (footnote omitted) (citation omitted). Both Aroma and Columbian appealed this decision to the Michigan Supreme Court "regarding 'the proper interpretation of "converting property to the other person's own use," as used in MCL 600.2919a.'" Id. at 140 (footnote omitted) (citation omitted).

> *b.* *The Michigan Supreme Court's Ruling in Aroma Wines*

The court wasted no ink with its decision, stating the following in the second paragraph of its decision:

> In this case, defendant argues that conversion "to the other person's own use" requires a showing that the other person used the converted property for the property's common or intended purpose. We decline to adopt such a narrow interpretation of "own use." Rather, we hold that the separate statutory cause of action for conversion "to the other person's own use" under MCL 600.2919a(1)(a) requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose.

Id. at 138. The court grounded its decision in legislative intent, stating,

> When examining the phrase "own use" in this light, it becomes clear that the Legislature did not seek to restrict the application of MCL 600.2919a(1)(a) on the basis of the intended or common purpose of the converted property. Rather, the only restriction to the application of MCL 600.2919a(1)(a) to a common-law conversion offense is that it must be used for a purpose personal to the converter. Therefore, we agree with the Court of Appeals' definition of "use" and hold that conversion "to the other person's own use" requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose.

Id. at 148. The court defended its broad definition of "use," referring to a case 145 years in the past:

> This broad definition of "own use" finds support in our early conversion caselaw. As explained earlier, in <u>Kreiter</u>, this Court held that conversion to someone's own use need not be geared toward the intended purpose of the converted property and held that a converter of beer was liable regardless of whether he or she "destroyed [it] from a belief in its deleterious effects, or made way with [it] in carousals or private drinking."

<u>Id.</u> (quoting <u>Kreiter v. Nichols</u>, 28 Mich. 496, 498–99 (1874)).

Finally, the court created a verbal formula for the determination of statutory conversion, holding that "the separate statutory cause of action for conversion 'to the other person's own use' requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose. <u>Id.</u> at 149. In short, the court instructed a future finder of law or fact to determine first if the property was converted, and, if so, whether that conversion was for the defendant's own use. <u>Id.</u> In the instant action, Defendants brazenly admit, even in their court filings, to their conversion of the property.

<u>c.</u>    <u>Defendants Destroyed the Property and Admit to Common-Law Conversion.</u>

Common-law conversion is a lesser-included tort in a statutory conversion claim. <u>See, e.g.</u>, <u>Aroma Wines</u>, 871 N.W.2d at 146. The statutory conversion statute in question, Mich. Comp. Laws § 600.2919a (2019), establishes its applicability to property that is "stolen, embezzled, or converted." § 600.2919a(1)(b). In short, just as Defendants' Brief in Support indicates, all statutory conversion is also common law conversion, but all common law conversion is not necessarily statutory conversion. <u>See, e.g.</u>, <u>Aroma Wines</u>, 871 N.W.2d at 148.

Defendants openly admit that they destroyed and converted the Property. (Pl.'s Exs. 1–3; Defs.' Br.) In their Motion for Summary Judgment, Defendants state, "Defendants admit that they

destroyed the pornography except for the sex toys."[2] (Defs.' Mot. ¶ 4.) Defendants' Brief in Support continues, saying "the defendants destroyed the pornography, a fate perhaps contemplated under common-law conversion but not statutory conversion under Michigan law." (Defs.' Br. 5.)  While Defendants' Brief understates destruction's ability to trigger common-law conversion,[3] they openly admit that they destroyed the Property. (Defs.' Br. 5.)  Defendants' Brief continues discussing their destruction of the property, stating that "under the decision in <u>Aroma</u>, destruction is not a use nor is it for the defendants' <u>own purpose</u>" and that "destruction is not a use as considered by MCLA 600.2919a." (Defs.' Br. 5.) Finally, defendants conclude that "no reasonable jury could find that destruction is a use for the Defendants' own purposes."[4] (Defs. Br. 6.)

Defendants admit throughout Plaintiff's Exhibits that they destroyed the Property. In Plaintiff's Exhibit 1, Defendant Beth Werking stated to Deputy MacKeller of the Ottawa County Sheriff's Department that Defendants did not want the Property in their house or to transport it to Plaintiff, so they destroyed the items. (Pl.'s Ex. 1, 3.) In Plaintiff's Exhibit 2, an e-mail from Defendant Paul Werking to Plaintiff on January 1, 2018, Defendant Paul Werking stated, "I do not possess your pornography. It is gone. It has been either destroyed or disposed of [sic]. I may well have missed a few items that are now in your possession but, at this point, if you don't have it, it is gone. Ditto for your sex toys and smutty magazines." (Pl.'s Ex. 2, 1.) Finally, in Plaintiff's Exhibit 3, Defendant Paul Werking stated, "Believe it or not, one reason for why I destroyed your porn was for your own mental and emotional heath.  I would have done the same if I had found a kilo of crack cocaine.  Someday, I hope you will understand." (Pl.'s Ex. 3, 2.)

---

[2] After initiation of the instant action, Defendants uncovered some of the Property that was presumed destroyed. The two parties are presently attempting to agree upon the value of the Property, which Defendants will return to Plaintiff. Plaintiff's arguments within his Brief in Opposition are limited to the property destroyed and lost, unless otherwise noted.

[3] <u>See, e.g.</u>, <u>Aroma Wines</u>, 871 N.W.2d at 349 for a discussion of how destruction can lead to statutory conversion.

[4] Plaintiff, again, vehemently disagrees with Defendants interpretation of <u>Aroma Wines</u>' findings regarding destruction and "own use."

Furthermore, the destruction of the Property was intentional. (Pl.'s Exs. 1–3.) The court in Tierney v. HSBC Consumer Lending Mortgage Services, Inc., No. 16-cv-11379, 2017 U.S. Dist. LEXIS 62157 (E.D. Mich. Apr. 25, 2017), dismissed a statutory conversion claim because the destruction of a key was both accidental and immediately rectified.  2017 U.S. Dist. LEXIS 62157 at *6. Neither of those situations are applicable to the instant case, as Defendants neither accidentally destroyed the Property nor immediately rectified its destruction.

In sum, there is little dispute that Defendants destroyed the Property and that the destruction was intentional. For Plaintiff's statutory conversion claim to stand, he must show that Defendants derived an own use from that destruction. See Aroma Wines, 871 N.W.2d. 136. Fortunately for Plaintiff, Defendants make his case for him.

> d.    Defendants Found the Property Objectionable.

Defendants have a negative view toward pornography that they continually reiterate.  (Pl.'s Exs. 1–3.)   In Plaintiff's Exhibit 1, the Ottawa County Sheriff's Department Police Report, Defendant Beth Werking stated to Deputy MacKeller that Defendants didn't want the Property in their house, so they destroyed the items.  (Pl. Ex. 1, 3 ¶ 6.)

In Plaintiff's Exhibit 2,[5] an e-mail from Defendant Paul Werking to Plaintiff on January 1, 2018, Defendant recounts a negative history with pornography, stating the following about a time when Plaintiff was in high school:

> At that time, I destroyed all of your pornography and reported your
> activities to . . . School officials and other parents.  I also warned you
> at that time that if I ever found pornography in my house again I
> would destroy it.  In fact, I believe I told you that I would have you
> arrested but I don't remember this for sure.

---

[5] Defendant's e-mail refers to child pornography.  Plaintiff vehemently denies said allegations and submitted an affidavit (Plaintiff's Exhibit 8) stating such in both paragraphs 6 and 11.  Moreover, Defendant Paul Werking alleges that there were multiple copies of the same title and thus Plaintiff may have been distributing said pornography.  Plaintiff has submitted a complete list of the items that he believed to have been destroyed by Defendants (Plaintiff's Exhibit 6), and none of the titles are duplicative, nor was Plaintiff distributing pornographic materials.

(Pl.'s Ex. 2). The discussion of the evils of Plaintiff's view towards pornography continues with Defendant stating "the love of a good woman was not enough to turn you from your evil ways." (Id.)  Defendant continues stating: "I made it very clear that I did not want any pornography in my house.

In Plaintiff's Exhibit 3, Defendant Paul Werking continues his diatribe against pornography, stating,

> I found DVDs depicting . . . detestable practices in your collection. Such things should not be promoted, celebrated, or glamorized.  Any civilization that tolerates or promotes these acts will not survive.  Any individual that puts this garbage into his mind (whether or not he commits these acts) will also suffer.  It should be no surprise to anyone that a person who watches this stuff every day will have nightmares and/or strange dreams . . . . That you would buy and watch films … is beyond the pale. I have no words to express the depth of my shock and disappointment.[6]

(Pl.'s Ex. 3.)

While academics, theologians, and the parties may disagree about the merits or detriments of pornography, it is clear that Defendants found pornography to be objectionable, even apocalyptic, on a societal level.  Defendants did not want pornography in their house and were unwilling to move it to Plaintiff's residence.   (Pl.'s Ex. 1.)   Defendants converted, via destruction, the pornographic Property to their own use.

Despite Defendants' assurances to the contrary in their brief, destruction can be a use both under the findings in Aroma Wines, 871 N.W.2d 136, and under a common sense examination.

In finding for the expansive definition of "own use," the Court in Aroma Wines discussed spoliation of an item due to the spoliator finding it objectionable.  The Court writes that

> Justice COOLEY's 1874 decision for this Court in Kreiter v. Nichols involved the conversion of beer and emphasized that if someone

---

[6] Defendant's e-mail contains another allegation that Plaintiff's property depicted imagery that would be otherwise illegal to own or distribute.  Once again, Plaintiff firmly denies such allegations.

> "converts [beer] to his own use in any form, a civil action will lie to recover from him the value," and "this civil action would not depend in any degree upon the method or purpose of the conversion." In explaining that conversion of beer to the other person's "own use" was broad in purpose, the Court observed that "the legal responsibility to pay for [the beer's] value would be the same" whether the converter "destroyed [it] from a belief in its deleterious effects, or made way with [it] in carousals or private drinking . . . ."

Aroma Wines, 871 N.W.2d at 144.

Defendants' Brief in Support states, "under the decision in Aroma, destruction is not a use."(Defs.' Br. 5.) However, despite Defendants' assurances to the contrary, the facts of Aroma Wines concern spoliation, and subsequent destruction, of the wine in question.  871 N.W.2d at 139.

Though Defendants' Brief states that "under the decision in Aroma, destruction is not a use nor is it for the defendants' own purpose" (Defs.' Br. 5) (emphasis in original), that is simply not the case under Michigan law. In Dumm v. Brown, No. 336344, 2018 Mich. App. LEXIS 1591 (Mich. Ct. App. Apr. 17, 2018)—which held that a party that prevented a property holder from access to the property, which was subsequently damaged by weather, committed statutory conversion—the court stated that the "to his own use" requirement may be satisfied by "conduct that damages or destroys the property" under Aroma Wines' interpretation of the requirement. Dumm, 2018 Mich. App. LEXIS 1591 at *10 (citation omitted).

Like the hypothetical prohibitionist contemplated in Kreiter, Defendants destroyed the Property due to a belief in its deleterious effects on their home, their son, and even society.  (Pl.'s Exs. 1–3.)  Defendants point to potentially socially distasteful depictions in the Property.  (Pl.'s Exs. 2–3.)  However, even property that one believes may harm society is protected, according to the Michigan Supreme Court, writing about lawfully produced intoxicating beer in the years of prohibition movements:

> The law protects this property precisely as it protects any other lawful product. If one steals it from the owner, he is punished for it; if he converts it to his own use in any form, a civil action will lie to recover

> from him the value. And this civil action would not depend in any
> degree upon the method or purpose of the conversion. Whether
> destroyed from a belief in its deleterious effects, or made way with in
> carousals or private drinking, the legal responsibility to pay for its
> value would be the same.

Kreiter, 28 Mich. at 498–99.   Thus, one's belief that some personal property is

distasteful does not excuse their conversion of it.

Defendants state within e-mails that the Property was illegal.   (Pl.'s Exs. 2–3).   Had a

governmental office required that the Property be destroyed, Defendants argument may hold water.

See Aspen Am. Ins. Co. v. Interstate Warehousing, Inc, Case No. 1:14-CV-383, 2019 U.S. Dist.

LEXIS 40027 (N.D. Ind. Mar. 13, 2019) (holding that, unlike in Aroma Wines, Defendant did not

have a choice regarding destruction of property because such destruction was mandated by the

government).[7]   However, this is not the case with Plaintiff's Property.

If the Court finds the nearly century-and-a-half–old holding of Kreiter (subsequently quoted

in Aroma Wines) to be invalid, a common sense examination of destruction can inform how

Defendants converted the Property to their own use.   Lighting a piece of kindling aflame will

invariably, given enough time, destroy the kindling.   However, in that time the kindling can provide

light, warmth, safety, and communicative use, even as it is being destroyed.   Even the ashes of the

kindling can serve communicative, socio-religious, or furtive purposes. Similarly, the burning of

Plaintiff's Property served multiple uses to Defendants.   In Defendants' minds, the destruction

removed the shame of having those items in their house; it obviated the need to transport said

items; it exerted parental control over their son; and it served to save their son from the demons of

pornography.

---

[7] See also Goodwin v. City of Detroit, No. 341239, 2018 Mich. App. LEXIS 3772 (Mich. Ct. App. Dec. 27, 2018)
(holding that a government officer ordering destruction of a building does not derive own use when acting within his
course of employment and scope of authority).

Defendants have admitted, multiple times, to multiple people, and for multiple reasons, that they found the Property to be objectionable. (Pl.'s Exs. 1–3). Defendants mischaracterized the findings of <u>Aroma Wines</u>, and a simple reading of the case necessitates the finding that destruction can meet the "own use" standard under Michigan law. Such a finding, moreover, is in accordance with cases dating to the 19th century with the findings of <u>Kreiter</u>. Finally, a common sense examination of destruction yields examples of destruction serving one's own use. As such, under Michigan law, the destruction of the Property—whether for its own sake, or for a greater purpose— meets the "own use" standard contemplated by <u>Aroma Wines</u>.

<u>e.</u>     *<u>Defendants Destroyed the Property for their Son's Benefit.</u>*

Defendant Paul Werking wrote in an email that "[b]elieve it or not, one reason for why I destroyed your porn was for your own mental and emotional heath. I would have done the same if I had found a kilo of crack cocaine. Someday, I hope you will understand." (Pl.'s Ex. 2.)

Defendants potentially could argue that the personal use of limiting their son's exposure to the Property is similar to the findings in <u>Human Rights Defense Center v. Bezotte</u>, Case No. 11-CV-13460, 2017 U.S. Dist. LEXIS 48817 (E.D. Mich. Mar. 31, 2017). In <u>Human Rights Defense Center</u>, the defendants placed publications of the plaintiff's work in jails and prisons. The defendants avoided a common law conversion finding because the plaintiff never asked for the publications back. 2017 U.S. Dist. LEXIS 48817 at *39. This is not on point to the instant action, as, here, Plaintiff did ask for his property back. (Pl.'s Ex. 4.) The defendants in <u>Human Rights Defense Center</u> further avoided a statutory conversion finding because the ultimate benefit accrued to third-party prisoners, not the defendants. 2017 U.S. Dist. LEXIS 48817 at *38–39. This is differentiated from the instant action, as Defendants accrued personal use from destroying the Property both by ridding the world of content they found objectionable (Pl.'s Exs. 1–3) and by attempting to better their son's life. (Pl.'s Exs. 2–3.)

Further, "[g]ood faith, mistake, and ignorance are not defenses to a claim of conversion." Magley v. M & W Inc., 325 Mich. App. 307, 315 (Ct. App. 2018) (citing Moore v. Andrews, 168 N.W. 1037, 1041 (Mich. 1918); Willis v. Ed Hudson Towing, Inc., 311 N.W.2d 776, 778 (Mich. Ct. App. 1981); 90 C.J.S. Trover and Conversion § 31). "A defendant who wrongfully exerts dominion over property is not shielded from liability [for the tort of conversion] on the basis that the action was undertaken in good faith on behalf of a third party." Id. at 314 Defendants state they believed they were doing their son a favor by destroying the Property. (Pl.'s Ex. 2.) However, that neither excuses nor justifies their actions from the perspective of a statutory conversion defense.

   *f.*   *Conclusion*

Both Plaintiff and Defendants agree that the court's decision in Aroma Wines is critical to any determination of civil liability. (See generally Defs.' Br.) Moreover, all parties agree that Defendants intentionally destroyed the Property. (Pl.'s Exs. 1–3; Defs.' Mot.) All parties even agree that the findings in Aroma Wines necessitate a proof of "own use" to meet the criteria for statutory conversion. (See generally Defs.' Br.; Pl.'s Br. Opp'n Mot. Dismiss.) Where the parties differ, however, is in their interpretation of Aroma Wines' "own use" standard as applied to destruction of the Property. (See generally Defs.' Br.; Pl.'s Br.) Despite Defendants' assurances to the contrary, destruction can be, and in the instant action is, demonstrative of personal use. See Kreiter, 28 Mich. at 496; Aroma Wines, 871 N.W.2d at 136. Defendants destroyed the Property because of their negative views towards pornography. (Pl.'s Exs. 1–3.) Defendants destroyed the Property because they feared what pornography had done, and would continue to do, to their son. (Pl.'s Exs. 1–2.) Noble as those intentions may be, they are no defense under Michigan statutory or case law. See, e.g., Magley, 325 Mich. App. 307. Defendants' negative views of pornography were furthered when they destroyed the Property, which meets the personal use criteria outlined in both Kreiter and Aroma Wines and in subsequent Michigan case law. As such, Defendants' motion should be denied.

Even though Defendants did not bring other defenses, it behooves Plaintiff and this court to examine them, *arguendo*.

### 4. Defendants Lack Other Defenses.

*a.*     *Introduction*

Defendants' Brief in Support does not explore other potential avenues of defense for their conversion of Plaintiff's Property. However, a cursory examination is warranted, as a study of Michigan case law will lead this court to the inexorable conclusion that, in addition to the lack of defense under the holding in Aroma Wines and subsequent case law, there is no other grounded defense for Defendants' actions.

*b.*     *Detention of Property, Later Returned, Constitutes Conversion.*

Defendants' Brief in Support details sex toys that were in Defendants' possession but that Defendants never destroyed, and that were later discovered (the "Sex Toys").[8] (Defs.' Br.) While it appears that the parties will be able to negotiate a stipulated amount to return the Sex Toys,[9] Plaintiff herein discusses the matter, *arguendo*, to preserve the record.

Defendants state in their Brief in Support two conclusions from Aroma Wines that are inaccurate. First, Defendants state the "movement of the property did not result in the spoliation or destruction of the property – specifically, the sex toys." Id. at 5. However, Michigan law allows for recovery of conversion damages even if the items are later returned: "Conversion may occur when there is a temporary deprivation of personal property, such as when the plaintiff's property is restored to him." Sutter v. Ocwen Loan Servicing, LLC, No. 320704, 2016 Mich. App. LEXIS 1043, at *5 (Ct. App. May 24, 2016) (citing Pamar Enters., Inc. v Huntington Banks, 580 N.W.2d 11 (Mich. Ct. App. 1998)). Even if the property is eventually returned, the rightful owner may be

---

[8] "Sex Toys" will serve as a catchall term, as there are items in Defendants' possession that are non-sexual in nature.

[9] As of the date of the submission of this brief, the items are in possession of Defendants, but the parties are negotiating in good faith.

entitled to the damages for the reasonable value of the use of or deterioration of the value of the property during the period of detention.  See Maycroft v. Jennings Farms, 176 N.W. 545, 546–47 (Mich. 1920); Central Transp., Inc. v. Fruehauf Corp., 362 N.W.2d 823, 828 (Mich. Ct. App. 1984); Jay Dee Contrs. v. Fattore Const. Co., 293 N.W.2d 620, 622 (Mich. Ct. App. 1980); 18 Am. Jur. 2d Conversion § 136.

Secondly, Defendants state, "[T]hey [Defendants] did not use the sex toys for any purpose, merely retaining it [sic] and later delivering the items to their attorney for return to the Plaintiff once an agreed valuation is reached and the complaint for damages reduced."  (Defs.' Br. 5.)  Said declaration, however, is incongruent with the Defendants' own admissions.  In Plaintiff's Exhibit 1, Defendant Beth Werking spoke with an Ottawa County Sheriff's Deputy, whose contemporaneous police report states that "Beth [Werking] advised there are a few property items of David's [Plaintiff] that remain at their residence too which she advised they haven't been in a hurry to return due to David [Plaintiff] being upset with them about the destruction of his pornography [sic]." (Pl.'s Ex. 1.) Defendants did not want to interact with their son to return the Sex Toys.  A reasonable juror may find, under the Iqbal, Twombly, and Ass'n of Cleveland Fire Fighters Rule 12(b)(6) standards, that this amounts to "own use," and hence Defendants committed statutory conversion on the Sex Toys.

<u>c.</u>    <u>Both Defendants Are Liable for Destruction of the Property.</u>

In Plaintiff's Exhibits 1–3, both Defendants admit to destroying the Property.  Defendant Beth Werking's admission comes via a police report summarizing her remarks (Pl. Ex. 1),[10] in comparison with Defendant Paul Werking's open admission.  (Pl.'s Exs. 2–3.)

However, Michigan case law is clear that "[a] person may be liable for conversion 'by actively aiding or abetting or conniving with another in such an act.  Indeed, one may be liable for assisting

_____

[10] Plaintiff notes, however, that Defendant Beth Werking's statements are non-hearsay (as they are an admission against self-interest), as well as meet a number of hearsay exceptions.

another in a conversion though acting innocently.'" <u>Prime Fin. Servs. LLC v. Vinton</u>, 761 N.W.2d 694, 714 (Mich. Ct. App. 2008) (quoting <u>Trail Clinic, P.C. v. Block</u>, 319 N.W.2d 638, 641 (Mich. Ct. App. 1982).[11]

While the record is unclear which of the two Defendants, or if both of them, destroyed, and converted, the Property, this Court need not attempt to determine who cast the proverbial stone. Both Defendants maintain liability for aiding in the conversion.

     <u>d.</u>    <u>Conclusion</u>

Defendants' Brief in Support does not advance any defenses to conversion beyond a misapplication of the findings in <u>Aroma Wines</u> and a restatement that Defendants will return the Sex Toys.  However, multiple other defenses to conversion exist under Michigan law; these defenses merited examination to ensure that Plaintiff's complaint can withstand the scrutiny warranted by a Rule 12(b)(6) motion.  After further examination, it is clear that a reasonable juror could find that the Sex Toys, though "only" detained, were converted.  Furthermore, Michigan law does not differentiate the converter of the property from someone who aided or abetted the converter. Defendants' lack other defenses to conversion, and the Court should not grant Defendants any leeway under these possible defenses.

    **5.**    **Defendants Failed to Discuss Lack of Subject Matter Jurisdiction.**

Defendants' Motion includes reference to Fed. R. Civ. P. 12(b)(1) concerning lack of subject matter jurisdiction but never discusses the issue elsewhere.  Plaintiff discusses the issue below, *arguendo*.  This case falls under this Court's jurisdiction under the diversity jurisdiction standard established in 28 U.S.C. § 1332.  To wit, Plaintiff is a resident of Indiana, both Defendants are residents of Michigan, and the total possible damages, including statutory trebling of damages and

---

[11] <u>See also</u> <u>Health One Med. Ctr. v. Bristol-Myers Squibb Co.</u>, Case No. 16-cv-13815, 2017 U.S. Dist. LEXIS 110285, at *11 (E.D. Mich. July 17, 2017); <u>Bush v. Hayes</u>, 282 N.W. 239, 240 (Mich. 1938).

attorneys fees, are in excess of seventy-five thousand and 01/100 dollars ($75,000.01).  § 1332 .

Though Defendants' Brief fails to further discuss the issue, Plaintiff addresses the issue of damages,

*arguendo*, and to preserve the record.

Plaintiff and Defendants currently dispute the value of the items in Defendants' possession.

Defendants believe they are of such value as to bring the total value of the claim, with trebling,

under the damage threshold; Defendants also maintain that attorney's fees cannot be considered as

part of the damage calculation.[12]  Even if Defendants' valuation is accurate and the total damages,

when trebled, are below the threshold, that is not enough to cause this Court to lose diversity

jurisdiction.  See, e.g., Saint Paul Mercury Indem. Co. v Red Cab Co., 303 U.S. 283, 293 (1938)

(holding that decreases in the amount in controversy below the jurisdictional minimum, "whether

beyond the plaintiff's control or the result of his volition," does not destroy diversity jurisdiction or

justify remand).  While Section 1332 limits damages to "exclusive of interest and costs," § 1332,

attorney's fees, when statutorily permitted, as in Mich. Comp. Laws § 600.2919a(1), are neither an

interest nor a cost, but a part of damages.  See Charvat v. GVN Mich., Inc., 561 F. 3d 623, 630 n.5

(6th Cir. 2009) (stating that "reasonable attorney fees, when mandated or allowed by statute, may be

included in the amount in controversy for purposes of diversity jurisdiction" (citation omitted)).[13]

As such, Plaintiff can also plead reasonable attorney's fees.

Courts in Michigan, and courts applying Michigan law, are split as to whether the trebling of

damages under § 600.2919a(1) is permissive or mandatory.  In Howard v. National City Mortgage,

No. 323118, 2016 Mich. App. LEXIS 24 (Ct. App. Jan. 12, 2016), the court stated that "in order to

be entitled to statutory treble damages in this case, plaintiffs were required to prove that [defendant]

---

[12] Plaintiff chooses not to attach such such conversations to this brief out of respect for Fed. R. Civ. P. 408.  If the court so orders, Plaintiff has no quarrels about disclosing the conversations.

[13] Cf. Puente v. State Farm Lloyds, Civil Action No. B-15-190, 2016 U.S. Dist. LEXIS 57139 (S.D. Tex. April 29, 2016).

converted the property to its 'own use' … 'even if [defendant's personal] purpose is not the object's ordinarily intended purpose.'" Howard, 2016 Mich. App LEXIS 24 at *20 (quoting Aroma Wines, 871 N.W.2d at 138). Another court, like Howard, also using the word "entitled," stated that because "the statutory conversion claim failed as a matter of law and plaintiff was not entitled to treble damages." Lansing Ice & Fuel Co. v. Smith, No. 328648, 2017 Mich. App. LEXIS 571, at *8 (Ct. App. Apr. 11, 2017). The Sixth Circuit has stated that § 600.2919a "comes with the added benefit of treble damages and a fee-shifting provision." Tyson v. Sterling Rental, Inc., 836 F.3d 571, 581 (6th Cir. 2016). Given that the court did not say "potential benefit" of treble damages, it can be assumed that the Sixth Circuit views the trebling of damages and attorney's fees as mandatory.[14]

However, some courts have taken a permissive view of trebling damages. In Department of Agriculture v. Appletree Marketing, 779 N.W.2d 237 (Mich. 2010), the court used a permissive standard, stating that "in a conversion action the Committee can recover exemplary damage." Appletree, 779 N.W.2d at 246. Aroma Wines & Equipment, Inc. v. Columbian Distribution Services, Inc., 844 N.W.2d 727 (Mich. Ct. App. 2013) cited with approval two unpublished decisions[15] in its finding that trebling is permissive. Aroma Wines at 732. Regardless of whether trebling is permissive or mandatory,[16] Plaintiff is able to plead the maximum potential damages calculation in order to satisfy the damages threshold of diversity jurisdiction. Charvat, 561 F. 3d at 630, n.5.[17]

---

[14] See also Alken-Ziegler, Inc v. Hague, 767 N.W.2d 668, 671 n.6 (Mich. Ct. App. 2009) (per curium) (speaking of "plaintiff's right to recover three times the amount of actual damages"); New Props., Inc. v. George D. Newpower, Jr., Inc., 762 N.W.2d 178, 189 (Mich. Ct. App. 2009) (per curium).

[15] Poly Bond, Inc. v. Jen-Tech Corp., No. 290429, 2010 Mich. App. LEXIS 1454 (Ct. App. July 27, 2010) (per curium); LMT Corp. v Colonel, LLC., No. 294063, 2011 Mich. App. LEXIS 700 (Ct. App. Apr. 19, 2011) (per curium).

[16] Adam D. Pavlik, Statutory Conversion and Treble Damages: Puzzles of Statutory Conversion, Mich. B. J., Mar. 2014, at 34, provides an exceptional analysis of why, logically, damages must be permissive.

[17] See also, e.g., Puente v. State Farm Lloyds, 2016 LEXIS 57139.

Given that courts have merely stated that trebling is mandatory or permissive, Plaintiff encourages this court to adopt the standards set forth in Howard, 2016 Mich. App LEXIS 24, and Lansing Ice & Fuel, 2017 Mich. App. LEXIS 571, as well as the legislative and logical findings detailed in Pavlik's Statutory Conversion and Treble Damages (*supra* at note 16), that treble damages, under a finding of statutory conversion, are mandatory.

In regard to mandatory attorney's fees, the court in Sutter held the view that they were required, holding, "Plaintiffs were not entitled to attorney fees because the complaint did not plead a legally cognizable claim of statutory conversion." 2016 Mich. App. LEXIS 1043 at *15. The court's use of the word "entitled" creates a standard that, under a succesful statutory conversion claim, attorney's fees are mandated, not merely permissive. In fact, the Sutter court obliviates the chance of an error by using the word "entitled" twice, stating, "[W]e again conclude that plaintiffs were not entitled to attorney fees pursuant to MCL 600.2919a(1)." Id.

However, in Mobiletech Automotive, LLC v. Crystal Clean Automotive Detailing, LLC., No. 324315, 2016 Mich. App. LEXIS 292 (Ct. App. Feb. 16, 2016), the court refused to award attorney's fees for two reasons. First, the plaintiff had stopped paying his attorney's bills, so attorney's fees could not reasonably be considered part of the damages. Mobiletech, 2016 Mich. App. LEXIS 292 at *9. Second, the court ruled that statutory conversion did not result in lost profits for the plaintiff, so awarding attorneys fees would be unjust. Id. at *9–10. However, the court in Mobiletech does not state if both conditions are necessary to refute a mandatory award of attorney's fees, or if either condition would suffice. Id.

A more neutral treatment of attorney's fees arises in Hunt v. Hadden, 127 F. Supp. 3d 780 (E.D. Mich. 2015). In Hunt, the court states that attorney's fees are not subject to trebling. 127 F. Supp. 3d at 788. This is an important distinction: attorney's fees may be used in damages calculations to secure diversity jurisdiction but may not be subject to trebling under the statute. Id.

Even assuming Defendants' calculation of damages is wholly correct, the incurred attorney's fees raise the instant action above the diversity jurisdiction damages threshold, with room to spare.

Absent any declaration regarding mandatory attorney's fees, Plaintiff encourages this Court to adopt the standard that attorney's fees under a finding of statutory conversion are mandatory, unless the dual prong standard in Mobiletech, 2016 Mich. App. LEXIS 292, is established.  In the instant case, Plaintiff has suffered lost damages due to the destruction of the Property, and is presently paying his attorneys fees.

Regardless of whether the trebling of damages and attorney's fees are treated as permissive or mandatory, the original and amended complaint meet the Saint Paul Mercury standard regarding damages calculations in diversity jurisdiction cases.  As such, Defendants' raised, but not briefed, concern regarding Fed. R. Civ. P. 12(b)(1) is not applicable and should be denied by this Court.

### 6.      Plaintiff's Amended Filings Address Any Issues Raised by Defendants.

Plaintiff, in his Amended Complaint, offers this Court proof of what Defendants did with the converted Property (Defendants destroyed it) and why (Defendants found it distasteful). (Pl.'s Compl. ¶ 34; Pl.'s Exs. 1–3.)  Compare with Crandall Office Furniture, Inc. v. Carroll, No. 335746, 2018 Mich. App. LEXIS 65 (Ct. App. Jan. 11, 2018) (holding that court would not uphold statutory conversion finding because plaintiff offered no proof of what defendant did with converted office furniture).[18]  Plaintiff's Amended Complaint meets the standard set forth in Sutter, 2016 Mich. App. LEXIS 1043. Specifically, it spells out, across multiple paragraphs, that Defendants admitted to destroying the Property because they found it objectionable, because they did not want the Property in their house, because they did not want to transport the Property, and out of love, albeit misapplied, for their son. (Pl.'s Am. Compl. ¶¶ 34–43.)

---

[18] See also Grammer Indus., Inc. v. Beach Mold & Tool, Inc., Case No. 15-cv-12694, 2019 U.S. Dist. LEXIS 68210 (E.D. Mich. Apr. 23, 2019) (upholding dismissal of statutory conversion claim because property could not be located).

Said pleadings, based on facts, all of which constitute admissions made by Defendants, create a claim that is not just plausible on its face but also meets the broad definition of "use" set forth in Aroma Wines.  See Iqbal, 556 U.S. at 678.  Despite Defendants' mischaracterization of the law in Aroma Wines, 871 N.W.2d 136, Plaintiff's Amended Complaint addresses all the issues raised by Defendants.

### Conclusion

Defendants' Brief in Support adequately identifies the issues and the key case at hand.  (See generally Defs.' Br.)  What Defendants' Brief does not do, however, is correctly apply the findings of the case they cite, Aroma Wines, 871 N.W.2d 136, or subsequent Michigan case law.  Defendants' position is only tenable if this Court finds that no reasonable juror could believe that Defendants destroyed the Property because they found it objectionable, because they did not want the Property in their house or to transport the Property, and because they loved their son, despite a plethora of evidence pointing to those very assertions.  Cf. Aroma Wines, 871 N.W.2d 136; Dumm, 2018 Mich. App. LEXIS 1591; Kreiter, 28 Mich. 496.  Defendants lack any other defenses under Michigan conversion case law, and under the standards of review set forth in Iqbal, Twombly, and Ass'n of Cleveland Fire Fighters, Plaintiff has far stronger ground from which to file a dispositive motion than do Defendants.  Finally, though the title of Defendants' Motion includes lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), their brief never discusses the issue; a simple calculation of potential damages under Mich. Comp. Laws § 600.2919(a)'s treble damages and attorney's fees provision shows that Plaintiff's damages meet the diversity jurisdiction threshold of 28 U.S.C. § 1332.

Almost a century and a half ago, Justice Cooley identified that misuse of a socially frowned-upon item, albeit a legal one, is conversion all the same.  Kreiter, 28 Mich. 496.  Much has changed since 1874, including the introduction of the statutory conversion statute, but what has not changed

is that Defendants' actions constituted conversion and that they derived use from the conversion.

<u>Cf.</u> <u>Aroma Wines</u>, 871 N.W.2d 136.  As such, this Court should deny Defendants' motion.

Dated:  June 3, 2019                                          POWERS & GREENGARD

_____
Miles L. Greengard (P76812),
Attorneys for Plaintiff
The Carraige House
509 Franklin Street
Grand Haven, MI  49417
616-350-8760 (Phone)
616-607-7322 (Fax)
mgreengard@powersgreengard.com