UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAVID ELLIOT WERKING, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>BETH EILEEN WERKING & )<br>PAUL MICHAEL WERKING, )<br>Defendants. )<br>_____ ) | No. 1:19-cv-276<br><br>HONORABLE PAUL L. MALONEY |

## OPINION

Plaintiff David Werking pursues a claim for statutory conversion against his parents, Beth & Paul Werking, for their destruction of his vast collection of pornography. The Defendants have now moved for dismissal and/or for summary judgment, claiming alternatively that Plaintiff's claim does not meet the amount in controversy or that it fails as a matter of law because statutory conversion requires a showing that the tortfeasor "converted property to their own use or for a purpose personal to them." In other words, the Defendants concede that they destroyed Plaintiff's property, but argue that even so, the pleaded facts cannot meet the elements of statutory conversion.

I.

David Werking moved into his parents' home in Michigan on October 5, 2016. He moved out on August 23, 2017, leaving some of his possessions in the basement. Those possessions included a trove of pornography and an array of sex toys.

In November, Plaintiff requested that his parents return his property, and they did so—in part—on December 16, 2017. The pornography and sex toys were not among the

1

possessions returned to David. Instead, the Defendants stated that "the items were destroyed."

In the months that followed, David and Paul discussed what happened via email. On January 1, 2018, Paul wrote in one such email:

> I do not possess your pornography. It is gone. It has been either destroyed or disposed of. I may well have missed a few items that are now in your possession, but at this point, if you don't have it, it is gone. Ditto for your sex toys and smutty magazines.

(ECF No. 8-2.) Paul added, "Frankly, David, I did you a big favor by getting rid of all this stuff for you." (*Id.*) A few months later, after local police became involved, Paul wrote another email, explaining why he had destroyed the porn: "Believe it or not, one reason why I destroyed your porn was for your own mental and emotional health." (ECF No. 8-3.)

## II.

Plaintiff filed suit in this Court, claiming that the value of his destroyed property was $25,557.89. He proceeds with a single-count complaint, raising statutory conversion under Michigan law. *See* M.C.L. § 600.2919(a)(1). To prevail on his claim, David must establish that the Defendants converted his property "for [their] own use." *Id.*; *see Aroma Wines & Equip, Inc. v. Columbian Distribution Services, Inc.*, 871 N.W.2d 136, 138 (Mich. 2015). If he prevails on the elements, the statute allows for the recovery of treble damages. *See* M.C.L. § 600.2919(a).

It is only the potentiality of treble damages that gets David before this Court. "As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). Under 28

U.S.C. § 1332(a), federal courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the matter is between citizens of different states.[1]

The Court finds that David has satisfied the amount in controversy for purposes of Section 1332, because, if successful, he could recover more than $75,000 based on his valuation of $25,557.89 for his destroyed possessions. *See Rosen v. Chrysler Corp.*, 205 F.3d 918, 922 (6th Cir. 2000) (reversing and remanding because district court "neglected to consider the possibility of treble damages" in its analysis of the amount in controversy). The Court thus **DENIES** the motion to dismiss for lack of jurisdiction.

### III.

The Court will now turn to the merits of David's statutory conversion claim. First as a preliminary matter, the Defendants have filed both a motion to dismiss and a motion for summary judgment. However, even the motion for summary judgment relies on Rule 12 standards—i.e. Defendants assert that "[a]s pled, Plaintiff has failed to establish that the defendants turned the pornography or sex toys for their own use or to a purpose personal to them such to satisfy the Michigan statute." (PageID.342.) Accordingly, the Court is going to treat both motions under the Rule 12 standards.

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1] David pleads diversity of citizenship by declaring that he is a citizen of Indiana, while his parents are citizens of Michigan.

555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face" *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). If the plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Getting to the heart of the coconut now, the legal issue before the Court is whether Paul and Beth converted David's pornography "to their own use" by destroying it. The issue is easily resolved by reference to *Aroma Wines*.

There, the Michigan Supreme Court applied the statutory conversion statute to a set of facts involving a wholesale wine importer and warehouse operator. *Aroma Wines*, 871 N.W.2d at 138. The wine importer, Aroma Wines, agreed to rent climate-controlled warehouse space from the Columbian Distribution Services to store some of its wine. *Id.* When Aroma fell behind on its monthly payments, Columbian moved the wine from its

4

climate-controlled warehouse to an uncontrolled environment, which resulted in the spoliation of much of the wine. *Id.* While the parties disputed Columbian's motive for moving the wine, Aroma filed suit raising, among other claims, statutory conversion. *Id.* at 139.

At trial, Columbian moved for a directed verdict on the statutory conversion claim, arguing that there had been no evidence to support a claim that Columbian had converted Aroma's wine to its own use. *Id.* The trial court agreed, concluding that to "use" the wine, "one would have to drink [the wine] or perhaps sell it[.]" *Id.* at 139–140. Accordingly, it granted Columbian a directed verdict. *Id.* at 140.

The Michigan Court of Appeals reversed the grant of a directed verdict, explaining that "drinking or selling the wine are not the only ways that [Columbian] could have employed [Aroma's] wine to its own purposes." *Id.* The parties then cross-appealed the Michigan Court of Appeals' interpretation of own use. Aroma claimed that the statutory conversion statute imposed an additional element beyond common-law conversion and that doing so was contrary to the intent of the Legislature. *Id.* Columbian, by contrast, claimed that the Michigan Court of Appeals' construction of "own use" was too broad and sought to reinstate the circuit court's narrower definition. *Id.*

The Michigan Supreme Court granted cert, limited to the interpretation of "own use." It first concluded that the history of common-law conversion and the language of M.C.L. 600.2919a(1)(a) led to a conclusion that the Legislature intended to limit claims "to a subset of common-law conversions in which the common-law conversion was to the other person's "own use." *Id.* at 141–42. It then proceeded to define what "own use" meant within the

5

context of the statute, which, after some linguistic analysis, the Court read to mean "that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id.* Of particular note, the relied upon *Kreiter v. Nichols*, a venerable Michigan Supreme Court opinion, explaining that "conversion to someone's own use need not be geared toward the intended purpose of the converted property and held that a converter of beer was liable regardless of whether he or she "destroyed [it] from a belief in its deleterious effects, or made way with [it] in carousals or private drinking." *Id.* at 148 (quoting *Kreitner*, 28 Mich. 496, 498 (1874)). In other words, even destroying property could be an "own use."

Finally, the court applied its definition to the case Aroma had presented at trial to assess whether evidence had been presented to conclude that "Columbian converted Aroma's wine to its 'own use,' that is, for some purpose personal to Columbian." *Id.* at 149. It concluded that there was enough evidence and adopted the language of the intermediate appellate decision:

> [i]f a jury believed the evidence showing that defendant moved plaintiff's wine for its own purposes—whether it be to sell the space to other customers or complete a construction project—or that it used the wine as leverage against plaintiff, it could have determined that defendant converted the wine to its own use.

*Id.*

In sum then, the lesson of *Aroma Wines* is that "own use" is to be broadly construed to mean any purpose personal to the defendant, which in that case included: (1) moving the wine to undertake an expansion project; (2) moving the wine to sell the space to other customers; or (3) simply using the wine as leverage against Aroma for its unpaid bills. *Id.*

Now, applying the lesson to this case is as simple as substituting David for Aroma Wines and Paul and Beth for Columbian and changing the subject matter from wine to pornography. Paul's emails to David, which are attached to the First Amended Complaint, make clear that he and Beth were motivated to destroy the pornography "from a belief in its deleterious effects." *Kreitner*, 28 Mich. at 498-99. Paul could not have been clearer on this point; he told David that he was motivated to destroy the pornography out of concern for David's mental and emotional health. Thus, as was explained in *Kreitner* and reaffirmed in *Aroma Wines*, even the destruction of property can be for one's "own use," so long as the person acts upon some personal motivation. David has accordingly pleaded a plausible claim for relief on his statutory conversion claim because he has alleged that his parents were motivated to destroy the pornography because of his deleterious effects on his mental and emotional health, so the motions to dismiss will be denied.

## IV.

Based on the foregoing, the Court has jurisdiction because the parties are diverse, and Plaintiff's claim could conceivably be for more than $75,000. In addition, David has stated a plausible claim for statutory conversion by alleging that his parents, Paul and Eileen Werking converted his pornography to their own use—by destroying it because of their belief in its "deleterious effects."

## ORDER

In accordance with the foregoing opinion, the Defendants' motions to dismiss and for summary judgment are **DENIED.**

**IT IS SO ORDERED.**

Date:  August 2, 2019        /s/ Paul L. Maloney
                             Paul L. Maloney
                             United States District Judge

8