US DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DAVID ELLIOT WERKING )
an Indiana Resident, )
      Plaintiff, )       Case No. 1:19-cv-276
)       Hon. Paul L. Maloney
vs. )
)
BETH EILEEN WERKING, )
a Michigan Resident, and )
PAUL MICHAEL WERKING, )
a Michigan Resident )
)
      Defendants. )

---

| POWERS & GREENGARD | VANDEBROEK LAW PLLC |
|---|---|
| Attorneys for Plaintiff | Attorneys for Defendants |
| Miles L. Greengard (P76812) | Anne M. VanderBroek (P81541) |
| The Carriage House | 17190 Van Wagoner Rd. |
| 509 Franklin Avenue | Spring Lake, MI 49456 |
| Grand Haven, MI  49417 | (616) 607-7522 (Phone) |
| (616) 512-5474 (Phone) | (616) 682-6109 (Fax) |
| (616) 607-7322 (Fax) | anne@vanderbroeklaw.com |
| mgreengard@powersgreengard.com | |

---

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

---

## Table of Contents

**Law and Analysis**……………………………………………………………4

1. Defendants' Restatement of the Facts is Inaccurate. …………………………………4

2. There Was No Landlord / Tenant Agreement, and no Landlord / Tenant Relationship. …………………………………………………………...6

3. A Remedy for Violation of 'Landlord' Rules is Not Destruction of Plaintiff's Property. ……………………………………………………………7

4. Plaintiff Had No Duty to Mitigate Damages; but Defendants Did. ……………...8 .,,

5. Abandonment is Not a Valid Defense in Michigan …………………………...9

6. Assumption of Risk Does Not Apply to Intentional Torts ……………………. 11

**Conclusion** …………………………………………………………………...12

## Table of Authorities

**Cases**

*Tambs v Jennings,* No. 340498 (Mich. Ct. App. Feb., 5, 2019) …………………………………10

*Montgomery v. Nancy Jones, Concord Bicycle Assets, LLC*, 355 F. Supp. 3d 720
(M.D. Tenn. 2019) …..……………………………………………………………………10-11

*Dumm v. Brown*, No. 336344 (Mich. Ct. App. Apr. 17, 2018) …………………………...8-9

*Aroma Wines & Equip, Inc v Columbian Distrib Servs*, 303 Mich App 441, 844 NW2d 727
(2013), *aff'd*, 497 Mich 337, 871 NW2d 136 (2015) ……………………………….......9, 12

*Ritchie-Gamester v Berkley*, 461 Mich 73, 597 NW2d 517 (1999) …………………………..11

*Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 593 NW2d 595 (1999) ………9

*Sparling Plastic Indus, Inc v Sparling*, 229 Mich App 704, 713-714; 583 NW2d 232 (1998)….9-11

*Willis v Ed Hudson Towing, Inc*, 109 Mich App 344, 350; 311 NW2d 776 (1981) ……………..8

*Van Slooten v. Lasren*, 410 Mich. 21, 50 (1980) …………………………………………10

*Felgner v Anderson*, 375 Mich 23, 32, 133 NW2d 136 (1965) …………………………………11

*Thoma v Tracy Motor Sales, Inc.*, 360 Mich 434, 438-49; 104 NW2d 360 (1960) ………………7

*Allen v Morris Building Company*, 360 Mich 214; 217 103 NW2d 491 (1960) …………………8

*McCullagh v Goodyear Tire & Rubber Company*, 342 Mich 244; 256 69 NW2d 731 (1955) …….8

**Statutes**

MCL § 554.601 ……………………………………………………………………….6

MCL § 554.616 ……………………………………………………………………….6

MCL § 600.2919 ………………………………………………………………….9-10

**Rules**

MCR 3.106 …………………………………………………………………………..12

## LAW AND ANALYSIS

1.     **Defendants' Restatement of the Facts is Inaccurate.**  Defendants Brief in Opposition contains numerous factual inaccuracies[1]; and these factual serve as the foundation for their affirmative defenses.  An examination of the facts and evidence should lead the court to discount Defendants' version of the facts stated in their Brief in Opposition.  (*See generally* Def's. Br. in Opp.)

Defendants' Brief in Opposition states that "…law enforcement only required that Plaintiff be absent from the property for 'at least three days,'" and that "Plaintiff had ample opportunity to remove the property himself avoid its destruction *[sic]*."  (*Id.*, at. pp. 3-4 (internal citations omitted.))  However, Defendant Beth Werking, in an e-mail of August 25, 2017, stated that "…you [Plaintiff] won't be able to move back to Smeengehaus[2] after what happened on Thursday[3]."  (Pl's. Ex. 19.)

Moreover, Plaintiff, in an e-mail to Defendant Paul Werking of October 12, 2017, stated that:

> You kicked me out on August 23rd, 2017.  Today is October 12th. You agreed, and I have it in writing, that you would take my belongings to me in a UHAUL. You agreed verbally as well. Mom would not allow me to return to the property to collect my belongings using PODS.  (Pl's. Ex. 20.)

Defendant Paul Werking never disputed that he kicked Plaintiff out.  (*See e.g.* Pl's. Ex. 20.)  Defendants had access, as sender and recipient, to Plaintiff's Exhibits 19 and 20.  Such exhibits discredit Defendants' claims that Plaintiff was allowed back on the property.  (*Compare* with Def's. Br. in Opposition, p. 3.)

---

[1] For example, while non-pertinent to the instant matter, Defendants supplied only partial funds for Plaintiff's divorce.
[2] Defendants' name for their property in Grand Haven, Michigan.
[3] Presumably, the interaction with law enforcement.

Defendants' Brief in Opposition states that Defendants "…had no duty to deliver the property to Plaintiff…" (*Id.*, at p. 4.)  However, Defendants agreed to "…take [Plaintiff's] belongings to [him] in a UHAUL *[sic]*." (Pl's. Ex. 20.)  Once again, Defendant Paul Werking never disputed Plaintiff's version of the facts, or his duty to return Plaintiff's belongings.  (*Id.*)

Defendants' Brief in Opposition further states that "Plaintiff did not ask for the return of his abandoned[4] property until three months had passed since his moving away[5]…," and that "…Plaintiff made no mention of the property for three months, though he had been in contact with Defendants regarding other issues for most of the time." (*Id.*, at 4.)  This, however, does not conform with the facts in evidence.  Plaintiff asked for his property no later than October 11, 2017, stating to Defendant Paul Werking "…you are not…obligated to bring me anything other than my things." (Pl's. Ex. 20.)

Moreover, Defendants not only never stated that Plaintiff needed to remove his property; instead, they did the opposite, implying that he could leave his property there. Defendant Beth Werking, in her e-mail of August 25, 2017 (after Plaintiff had been barred from returning to Defendants' house), states that "[i]f there are any personal items you [Plaintiff] need immediately, you may email me and I will arrange that you can pick it up at some place other than here." (Pl's. Ex. 19.)  The clear implication from this e-mail is that if there were items that Plaintiff did not need immediately, those items could remain at Defendants' house until Plaintiff secured permanent housing.

---

[4] There is no defense of abandonment, under Michigan law, for personal property in a (statutory) conversion claim.  *See* § 5, *infra*.
[5] Plaintiff did not move away; rather, he was told he could not return.  (*See e.g.* Pl's. Exs. 19-20.)

Defendants' Brief in Opposition moreover offers spurious and unfounded claims against Plaintiff, including that he "…unlawful[ly] distribut[ed pornography.]6" (*Id.*, at 1.) Finally, Defendants' Brief in Opposition states that "…there is also the critical issue of damages…," which "…can only be answered through the discovery process." (*Id.*, at 4-5.) However, Plaintiff's Rule 56 Motion specifically asks this Court to "[o]rder a damages hearing at a time convenient for the Court." (*Id.*, at p. 2, ¶ B.) An evidentiary hearing on damages would allay Defendants' fears and 'need' for discovery.

In total, Defendants misstate and misapply numerous facts of the instant case. Defendants rest their opposition to Plaintiff's Rule 56 motion on a factual dispute, but their facts are inaccurate, and should be discounted by the court.

**2.      There Was No Landlord / Tenant Agreement, and no Landlord / Tenant Relationship.** Defendants fail to offer any statutory or common law authority for their claimed ability to limit Plaintiff's property7. (Defs'. Br. in Opp. § 2.) Defendants' citation to the Landlord and Tenant Relationship Act ("LTRA") MCL § 554.601 *et. seq.* is misguided. The LTRA does not apply to the instant scenario as Defendants required no security deposit of Plaintiff. LTRA "…applies only to security deposits held pursuant to leases entered into…after April 1, 1973). MCL § 554.616. As there was no security deposit required, LTRA is inapplicable to the instant case, and the rights and responsibilities of landlords contained therein should be ignored by this court.

Defendants cite to no other statutory or common law for their assertion that "…[l]andlords may prohibit…property." (Def's. Br. in Opp., p. 5.) As such, this Court

---

6 To say nothing of Defendants' previously stated, and unfounded, fears that the property contained child pornography. (*See e.g.* Defs'. Mot. for Prot. Order.)
7 As Defendants indicate in their Brief in Opposition, "no explicit rental agreement was created or executed by the parties." (*Id.*, at p. 6).

should not find that Defendants were within their rights to limit Plaintiff's property. However, even if the Court finds otherwise, Defendants fail to show how destruction of offending property is an appropriate remedy.

**3.     A Remedy for Violation of 'Landlord's Rules is Not Destruction of Plaintiff's Property.**  Even assuming, *arguendo*, that Defendants, despite their lack of a contractual relationship as 'landlords' to Plaintiff, were able to limit the property owned or held by Plaintiff, the remedy is not destruction of the offending items, but rather expulsion of the tenant.  Indeed, Defendants own Brief in Opposition belies this fact. "[L]andlords are able to … create…rules that tenants are bound to follow or risk eviction and the payment of damages." (*Id.*, p. 5.)  The remedy is eviction or damages, not destruction.

Defendants point to no case law or statutory authority allowing them, if Plaintiff violated their 'quid pro quo' relationship, to destroy Plaintiff's property.  (*See generally* Defs'. Br. in Opp.)  Defendants' sole piece of evidence that they warned Plaintiff against bringing the offending property into their home is an affidavit (Defendants' Exhibit 1 ¶ 7) – there is no contemporaneous record of such a conversation.

Finally, though (statutory) conversion has many affirmative defenses of which Defendants have availed themselves, the "intentiona[l] destr[uction]…in the actor's possession" when the actor has "privileg[e] to dispose of the chattel," is not one.  *Thoma v Tracy Motor Sales, Inc.*, 360 Mich 434, 438-49; 104 NW2d 360 (1960).  Defendants had no privilege or right to dispose of the chattel.

Defendants, *arguendo*, had the right to limit the property Plaintiff brought to the premises, but that right stops at the intentional dispossession, or in this case destruction,

of Plaintiff's property.   Such a discussion, and the determination of Defendants' remedies, and whether those remedies extend to destruction of the property, is not a question of "material fact," as Defendants claim, but rather a question of law. Defendants cite to no law that they could destroy the property as a remedy to violating any tenancy agreement.   As such, this Court should not find that Defendants were entitled to destroy the property; rather, this Court should find the opposite – that Defendants were not entitled to destroy the property.

   **4.      Plaintiff Had No Duty to Mitigate Damages; but Defendants Did.**

Defendants' Brief in Opposition, at page 9, states that Plaintiff had an affirmative duty to mitigate damages.   (*Id.*, at 9).   While true for torts in general, this does not apply to intentional torts.   "The rule requiring an injured party to mitigate his damages does not apply, where the invasion of his property rights is due to defendant's intentional or positive and continuous tort." *Allen v Morris Building Company*, 360 Mich 214; 217 103 NW2d 491 (1960).[9]   Given that Defendants intentionally destroyed the property[10], Plaintiff was under no duty to mitigate damages.

   Moreover, Michigan law is clear, even passive actions that may damage property (as opposed to the active measures Defendants undertook), can lead to a statutory conversion claim.   In *Dumm v. Brown*, No. 336344 (Mich. Ct. App. Apr. 17, 2018), the Court held that "defendant exercised dominion over the disputed items, despite his awareness that they were not his, in disregard of plaintiff's ownership rights, by denying plaintiff access to … retrieve the items, and by moving the items to a location where

---

[8] *But see* § 2, *supra.*
[9] *See also Willis v Ed Hudson Towing, Inc*, 109 Mich App 344, 350; 311 NW2d 776 (1981), and *see McCullagh v Goodyear Tire & Rubber Company*, 342 Mich 244; 256 69 NW2d 731 (1955)
[10] *See e.g.* § 2(c-e) of Plaintiff's Brief in Support of Rule 56 Motion.

they became damaged by exposure to weather."[11]   In *Dumm*, it was not the defendant who directly destroyed the property, but rather, the elements.   Accordingly, it was Defendants, not Plaintiff, who had a duty to mitigate damages.

Even assuming, *arguendo*, that Plaintiff did have a duty to mitigate damages, Defendants' restatement of the actions undertaken by Plaintiff are wholly inaccurate.[12] Defendants' Brief in Opposition states that "Plaintiff knew or should have known the consequences if the pornographic material was discovered."   (*Id.*, p. 9.)   However, destruction is not a remedy available to Defendants. (*See* § 3, *supra*.)   Defendants' Brief in Opposition further states that Plaintiff "had ample opportunity to remove the pornographic material," and "Plaintiff had a period of more than three months in which he could have removed the property…".   (*Id.*, at 9.)   These facts, and the implication that Plaintiff did not undertake opportunities to minimize damages, do not comport with the facts in evidence.   (Pl's. Exs. 19-20.)[13]

As such, even though it was Defendants, not Plaintiff, who had a duty to mitigate damages, Plaintiff attempted to mitigate damages.   Accordingly, this Court should not give any leeway to Defendants' affirmative defense.

**5.        Abandonment is Not a Valid Defense in Michigan**.   Defendants' Brief in Opposition states that "…the intent of the court in *Sparling Plastic Indus, Inc v Sparling*, 229 Mich App 704, 713-714; 583 NW2d 232 (1998) is clear - that abandonment may be

---

[11] *See Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 593 NW2d 595 (1999) (decided before 2005 amendments to MCL 600.2919a); *see also Aroma Wines & Equip, Inc v Columbian Distrib Servs*, 303 Mich App 441, 844 NW2d 727 (2013), *aff'd*, 497 Mich 337, 871 NW2d 136 (2015) (holding that defendant's refusal to let plaintiff access wine it stored in defendant's warehouse until plaintiff paid account balance owed under parties' contract constituted conversion of wine to defendant's "own use" under MCL § 600.2919a(1)(a)).
[12] For a more thorough discussion of such, see § 1, *supra*.
[13] *See* § 1, *supra*.

presumed when personal property is left behind after vacating real property." (*Id.*, at p. 7.)  That intent not only is read whole cloth into the ruling by Defendants, but, indeed, such a proposition violates the bedrock basis of our judicial system – *stare decisis et non queita movere.*

If the Court in *Sparling* (or *Tambs v Jennings,* No. 340498 (Mich. Ct. App. Feb., 5, 2019), or *Van Slooten v. Lasren*, 410 Mich. 21, 50 (1980)) wished for abandonment to apply to (statutory) conversion, as opposed to merely claim and delivery, the Court would have held accordingly.  It did not.  *See Sparling* at 713-714.  Indeed, in *Sparling*, there was a claim for conversion, and the *Sparling* court still did not apply its holdings to conversion, or MCL § 600.2919)(a)!  Defendants' assessment about the *Sparling* Court's intent is simply wrong.

Defendants fail to cite to any Michigan statutory or common law authority regarding abandonment as a defense to conversion.  (*See generally* Defs' Br. in Opp. § 4.)  Even discounting this complete lack of authority, Plaintiff's actions regarding his property would more than meet the bar established, and cited by Defendants, in *Montgomery v. Nancy Jones, Concord Bicycle Assets, LLC*, 355 F. Supp. 3d 720 (M.D. Tenn. 2019)[14].

Plaintiff had no opportunity to remove the property with him, as he was "…required by law enforcement to leave the premises…" (Defs'. Br. in Opp., p. 1.)  Plaintiff, in contradiction to Defendants' Brief in Opposition at page 8, did make arrangements for his property to be delivered to him, by Defendants.  (Pl's. Ex. 20.)  Moreover, Plaintiff's "…numerous conversations…" (Defs'. Br. in Opp., p. 8) with Defendants featured multiple inquiries about his property.  (Pl's. Exs. 19-20).  Finally, Plaintiff did not wait

"…until November 2017…," (Defs'. Br. in Opp., p. 8) to request a return of his property; rather he requested the return of the property no later than October 11, 2017. (Pl's. Exs. 19-20.)  As such, the standards for abandonment established in *Montgomery* are not met by the instant case.  More importantly, however, is that abandonment, absent a complete disregard by this Court of *stare decisis*, is not an affirmative defense to conversion – statutory or otherwise.  *See Sparling* at 713-714.  As such, this Court should give no weight to Defendants' affirmative defense of abandonment.

    **6.**    **Assumption of Risk Does Not Apply to Intentional Torts.**  Traditionally, assumption of risk was an affirmative defense of limited application[15]; however, Michigan courts have expanded assumption of risk to include negligence[16] and voluntary recreational activities[17].  Yet, no Michigan court, or statute, has expanded assumption of risk to intentional torts in general, or (statutory) conversion specifically.  Indeed, the very concept of intentional torts (which includes statutory conversion) is anathema to an assumption of risk.  If something is *prima facie* tortious, there can be no assumption of risk.

Despite Defendants' Brief in Opposition's assessment that "[t]he instant case is a classic example of assumption of the risks[,]" such a finding by this court would be a massive upheaval of law in Michigan, based on no statutory or common law authority. The Court should not do so.  As such, there should be no weight given to Defendants' affirmative defense of assumption of risk.

---

[14] Though *Montgomery* was decided by a District Court within the Sixth Circuit, it applies Tennessee law, and thus offers minimal precedential value to the instant case. However, Plaintiff, *arguendo*, discusses its applications.

[15] *See e.g. Felgner v Anderson*, 375 Mich 23, 32, 133 NW2d 136 (1965)

[16] *See e.g. Id.,*

[17] *See e.g., Ritchie-Gamester v Berkley*, 461 Mich 73, 597 NW2d 517 (1999)

## CONCLUSION

Defendants are long on hypothetical affirmative defenses, but short on their application to the instant case.  Even after giving Defendants every benefit of the doubt, as the Court must under a Rule 56 motion, Defendants have offered zero statutory or common law authorities for a landlord's remedy of destroying offending property.[18]  Defendants, not Plaintiff, had the duty to mitigate damages – a duty that they failed in (while Plaintiff attempted to secure his property numerous times in order to mitigate damages).  Abandonment and assumption of risk are similarly inapplicable affirmative defenses, applying, respectively, to claim and delivery and negligence claims, as opposed to the instant case's intentional tort.  Finally, there is no remedy under Michigan common or statutory law for a landlord to destroy offending property.

In short, Defendants offer the court multiple affirmative defenses, but none of them are applicable to the facts at bar.  Rather, this Court should look to the ruling in *Aroma Wines & Equip, Inc. v. Columbian Distribution Servs., Inc.*, 871 N.W.2d 136 (Mich. 2015), and find that there is no material factual dispute.

While it is likely that that Defendants believed that, in their conversion of the property, they were doing their son a favor – misguided love is not an affirmative defense. This Court should find accordingly, and order a damages hearing so that Plaintiff can be made whole.

Dated: February 21, 2020                              POWERS & GREENGARD

_____

Miles L. Greengard (P76812)

[18] Indeed, a landlord cannot remove, to say nothing of destroy, a tenant's personal property absent a court order.  *See e.g* MCR 3.106.

Attorney for Plaintiff
The Carriage House
509 Franklin
Grand Haven, Michigan 49417
(616) 350-8760
mgreengard@powersgreengard.com

List of Exhibits

Exhibits 1-18   Intentionally Left Blank
Exhibit 19      August 25, 2017 E-Mail from Beth Werking
Exhibit 20      October 12, 2017 E-Mail from Plaintiff

Exhibits 1-18
Intentionally Left Blank

Exhibit 19
August 25, 2017 E-Mail from Beth Werking

**From: David Werking** omik2omik2@hotmail.com
**Subject:** Fw: moving forward
**Date:** February 20, 2020 at 1:19 PM
**To:** Miles Greengard mgreengard@powersgreengard.com



**From:** beth werking <bewerking@yahoo.com>
**Sent:** Friday, August 25, 2017 8:21 AM
**To:** David Werking <omik2omik2@hotmail.com>
**Subject:** re: moving forward

As you have probably already figured out, you won't be able to move back to Smeengehaus after what happened on Thursday. Probably you don't either so now we just figure out where to go from here. If there are any personal items you  need immediately, you may email me and I will arrange that you can pick it up at some place other than here.

Because I do care and am concerned about your immediate welfare, I made some phone calls yesterday about shelters. Miguel Cruz worked as a resident assistant at Harbor Hall in Grand Haven. It is run by Love, Inc. You would have to fill out an application at their main office on Ferry. There are no immediate openings, but possibly you could get in next week. Miguel has said that you may mention his name and since he knows you, that might be a good ticket. It is more than a shelter, they offer meals, counseling and job seeking assistance.

The Holland Rescue Mission is open to receive those in need for temporary housing, so you might be able to just show up. I put in a call yesterday for you, Aaron Paul is the contact. Again, Miguel worked in the building and you can use his name.

I am sure you are concerned about the bigger items, let us know when you have a permanent address and we will send them to you if it within a reasonable distance for us to manage it.

Exhibit 20
October 12, 2017 E-Mail from Plaintiff

**From: David Werking** dwerking34@hotmail.com
**Subject:** Fw: Hello from Grand Haven
**Date:** February 20, 2020 at 1:08 PM
**To:** mgreengard@powersgreengard.com



Sent from Outlook

**From:** David Werking
**Sent:** Thursday, October 12, 2017 10:47 AM
**To:** pmwerking@reagan.com <pmwerking@reagan.com>
**Subject:** Re: Hello from Grand Haven

Dad,
1.)You kicked me out on August 23rd, 2017.  Today is October 12th. You agreed, and I have it in writing, that you would take my belongings to me in a UHAUL. You agreed verbally as well. Mom would not allow me to return to the property to collect my belongings using PODS. My lawyer, Patrick Baghdasarian who you know, has a list of all of the items that are mine from the house. I also have pictures of my belongings on the phone that I took with me when I left. I have receipts of the things I bought that arrived at your house while I was staying there. **I want my belongings. I need my belongings.** You will return my belongings to me unharmed before the November 17th mark. If you would like I can forward the letter from Patrick when I asked him about it.
No. I don't care about the card table and chairs. All I care about is my stuff.
2.) Bring me my stuff.
3.) Bring me my stuff.
4.) It is in a grey bag at the bottom of the closet in Auntie M.'s room.
6.) The realtor gave me a crockpot. Don't need the crockpot anymore.
8.) I will pencil you in for a Christmas visit!

David Werking
dwerking34@hotmail.com

Sent from Outlook

**From:** pmwerking@reagan.com <pmwerking@reagan.com>
**Sent:** Wednesday, October 11, 2017 9:27:30 PM
**To:** David Werking
**Subject:** Re: Hello from Grand Haven

David,

I'll try to respond to as many items as I can.

1. If I brought a card table and a couple of chairs to sit on, would you make me bring them back? or could I leave them there?

2. Your right, the trailer is not big enough for all of your stuff.  I see that now.  I'll need to prioritize on this trip and

bring the rest later.  Any thoughts?

3. Regarding your art: Would you like me to hold off on bringing some of it?  Maybe I could bring the stuff that is well packaged.

4. Couldn't find the air mattress.  Will keep looking.

5. Found the suit jacket, boom box and video games.  Will bring.

6. Mom has a crockpot she can give you and I'll bring it.

7. Don't worry about the delay from the auditor.  It may take a few weeks.

8. We will be going to Phoenix for Thanksgiving.  Maybe we could get together for Christmas.  We'll see.

Hope I didn't miss anything.

Dad


-----Original Message-----
From: "David Werking" <dwerking34@hotmail.com>
Sent: Wednesday, October 11, 2017 10:22am
To: "pmwerking@reagan.com" <pmwerking@reagan.com>
Subject: Re: Hello from Grand Haven

Or there's a nice new MCL cafeteria we could go to.


Sent from Outlook<http://aka.ms/weboutlook>
_____
From: David Werking
Sent: Wednesday, October 11, 2017 9:19:52 AM
To: pmwerking@reagan.com
Subject: Re: Hello from Grand Haven


But seriously, you are not legally obligated to bring me anything other than my things. Speaking of which this reminds me: I did hang up one piece of clothing of mine in the closet with Grandpa's old stuff and the air mattress: my suit jacket. It's newer and looks newer, forget the label. My stereo boombox and ps vita games are on the dresser.

This house is not being fun right now. Spent the better part of an hour looking for the main water shut off valve. If there's a water issue I need to be able to take care of it! Outside water faucets don't work and windows are nailed shut/don't open. No screen door. Have been on the phone with Comcast 3 times this week. First they sent me the wrong things and then they sent a repair guy who was supposed to show up and never did. Outside grass is weedy and don't know where to buy some Weed N' Feed. Need a ladder to check out the gutters to make sure they aren't full of leaves. Need a stepstool to change some of these lightbulbs. Also no crockpots. Have been unable to find a cheap five dollar crock pot and I don't know why. Stuff seems expensive except for movies. PS you need to go see the new Blade Runner so we can talk about it. Did I mention I live close to the train yard?

If you're not coming to warm the new house on the 14th, are you coming for Thanksgiving/Christmas? I am not buying a turkey or a christmas tree unless I know for sure. ASK MOM!


Sent from Outlook<http://aka.ms/weboutlook>
_____
From: David Werking
Sent: Tuesday, October 10, 2017 12:51:04 PM
To: pmwerking@reagan.com
Subject: Re: Hello from Grand Haven

If YOU need/want to bring a card table/couple of chairs to sit on while I take all my stuff out of the UHAUL that's fine. I am comfortable until my bear skin rug arrives. It's a Grizzly!

90 degrees is owwie. Today it's supposed to get up to 76. Raining lots.

I think you might be underestimating the time it takes for me to unload a UHAUL...

There is an air mattress in the closet of the upstairs room (the second room of stuff you are moving) You don't want to use that?

What's all this about pulling a trailer? The trailer is full of your stuff going from Rockford to Grand Haven? I do not think all my stuff will fit in a trailer, I hope you are not thinking of using this with my things...cos hey bouncing alot is not really good for art...


Sent from Outlook<http://aka.ms/weboutlook>
_____
From: pmwerking@reagan.com <pmwerking@reagan.com>
Sent: Tuesday, October 10, 2017 10:20:15 AM
To: David Werking
Subject: Hello from Grand Haven

David,

I got to GH OK but what a trip.  I left Sunday morning at 9:00AM but didn't get to GH until after midnight.  I forgot that you can only go at 55 MPH pulling a trailer.  In fact, I probably spent more time going at 50 than I did at 55 because the trailer tends to bounce alot.  As a result, my usual 12 hour drive took over 15 hours.  What made it really bad was that it was 90 degrees all afternoon in Iowa and I couldn't use the AC because that started to overheat the engine.  Regardless, I made it here and I will be bringing your stuff to you on Saturday.  I'll probably get there early in the afternoon around 2:00PM-3:00PM.  Then I will head to Marion to spend the night at my Mom's place.  Mom wanted me to ask you if you would like to have an old card table and a couple of chairs?  It wouldn't take much room to haul and you could probably use something to sit on until you find something better.

Dad