Exhibit 1

Dr. Victoria Hartmann Report on Destroyed Property

# Appraisal Report

Victoria Hartmann, Ph.D.

January 2nd, 2020

Self-Contained Appraisal Report for A Collection of Pornographic Film

Intended Use: Substantiate a Replacement Cost
Type of Value: Fair Market Value

Client: Paul and Beth Werking
Case #1:19-cv-00276

Appraised by: Victoria Hartmann, Ph.D.

Date of Appraisal: December 17th - 24th, 2020
Effective Date of Appraisal: December 27th, 2020

Date of Report: January 2nd, 2021

Updated: February 24th, 2021

## INTENDED USE AND USERS

The intended use of this appraisal is limited to substantiating a replacement value for a

previously existing collection of adult films. The intended users of this report are limited to

the plaintiff and financial and legal representatives.

## VALUE DEFINITION

The type of value used in this appraisal is fair market value.

## DEFINITION OF VALUE

Fair Market Value is the price at which property changes hands between a willing buyer and

a willing seller, neither having to buy or sell, and both having reasonable knowledge of all

the relevant facts.

(From IRS Publication 526 (2019), *Charitable Contributions, p. 11.*)

## APPROACH TO VALUE

The following approaches to value are commonly used in the appraisal of personal property:

**The Cost Approach to Value** concludes either reproduction for replacement cost of a

property, either new or depreciated.

**The Income Approach to Value** concludes the present worth of anticipated future benefits of owning income-producing properties or objects.

**The Market Comparison Approach to Value** estimates value by comparison with properties sold in the relevant market, with adjustments for all differences that affect value, such as differences in characteristics of value, in provenance, and in time exposed to the market in order to arrive at the opposite conclusion of value.

(From Soucy, Patricia C. and Smyth, Janella N., Eds. *The Appraisal of Personal Property: Principles, Theories, and Practice Methods for the Professional Appraiser.* Washington. D.C.: The American Society of Appraisers, 1994, p.19)

Each of these approaches was considered for this appraisal.

1. These films are mass produced for the marketplace. Mr. Werking is not required to re-film or re-record these films in order to replace them. As such, the Cost Approach to Value was not used.

2. Comparatives to other (or the same) films in the market place were applicable, as these films are easily found for the most part for purchase, and their value would not be more or less based on unique aspects of the films. Thus, the Market Comparison Approach was utilized here.

3. Mr. Werking did not produce these films, nor was he part of the original production. He did not purchase the original reels of these films, nor does he own exclusive distribution rights. Mr. Weking would not generate income from these films. Thus, the Income Approach to Value was not applicable in this appraisal.

NARRATIVE

According to media reports, in the lawsuit Werking v. Werking, Case #1:19-cv-00276, filed in Michigan Western District Court, David Werking said that, after a divorce, he had lived rent-free in his parents' Grand Haven home for about a year. In August 2017, he moved out "at the request of local law enforcement,"  leaving many of his possessions behind.

A few months later, his parents — Paul and Beth Werking — delivered some of the possessions he had been asking that they return. He noticed items were missing. In an email, he said, his father told him: "We counted twelve moving boxes full of pornography plus two boxes of 'sex toys' as you call them. We began that day the process of destroying them and it took quite a while to do so."

District Judge Paul Maloney granted David Werking's request for summary judgment on November 10th, 2020.

On December 15th, 2020, the law firm VanderBroek Law PLLC, representing the Defendants, contacted me for a formal appraisal of the collection.

The collection consisted of 2289 adult films from the mid 1970's until the mid 2000's.

### RESEARCH

The question of the value of pornography continues to be hotly debated both in popular culture and in academia. Does pornography have value? If so, how do we determine such a thing? Does it have intrinsic value, or do we base the value of pornography simply from a financial perspective - considering the cost of production, the cost of distribution, and the cost to the customer purchasing a film.

Michael Rea (2001), one of the few authors who has devoted an essay to the issue of defining pornography, proposes the following:

> $x$ is pornography if and only it is reasonable to believe that $x$ will be used (or treated) as pornography by most of the audience for which it was produced.

Before we explore the conditions of the proposition presented, let us a take a brief look at the history of the mainstreaming of pornography.

The mainstreaming of pornography is indebted to the success of feature-length hardcore films of the 1970's. These films were shot on 35mm, had story-esque narratives, were screened both in the USA and internationally, and for their time, had bigger budgets than prior at-home filmed sexual encounters, which were non-commercial. Films such as Deep Throat (1972), Behind the Green Door (1972), The Devil in Miss Jones (1973), The

Opening of Misty Beethoven (1976) and Debbie Does Dallas (1978). These films have since been established as classics (Buscombe 2004: 30). Porn historiography characterizes the 1970's as an era of sexual, and even artistic, exploration, unhinged by AIDS, and of adult film-making undisturbed by video technology or the economic dictates of the porn industry, as we see today. The 1970's were about the convergence of independent art film-makers and pornographers. The artistic avant-garde saw porn as a means to explicitly critique sexual mores; while pornographers saw the possibility of attracting liberal mainstream audiences through artful films (Patton 2000: 258, also Wyatt 1999).

As the porn industry has evolved and changed, so to have academic and social attempts to define pornography at each stage of it's evolution, from it's features in mainstream theaters, to it's introduction in to the privacy of viewers homes through the mediums of VHS, and later, DVD; and now it's wide availability through streaming and online sources.

Coming back to how we define the value of pornography. Arguments have been made that while art is largely valued intrinsically; a painting can be valued for its composition, regularity, harmony, uniqueness, balance, tension, diversity and complexity; pornography is primarily viewed instrumentally. Pornography is usually considered a depiction of explicit sexual subject matter meant to arouse and sexually excite the viewer.  Michael Rea (2001), specifies what it means for someone, S, to use something, $x$, as pornography. He lists 4 conditions (2001: 120):

1.  $x$ is a token of some sort of communicative material

2.   S desires to be sexually aroused or gratified by the communicative content of $x$

3.   if S believes that the communicative content of $x$ is intended to foster intimacy between S and the subject(s) of $x$, the belief is not among S's reasons for attending to $x$'s content

4.   if S's desire to be sexually aroused or gratified by the communicative content of $x$ were no longer among S's reasons for attending that content, S would have at most a weak desire to attend to $x$'s content.

As we see in the argument proposed by Michael Rea, the pivotal term in his definition is the term "use". The term use implies the commoditization of an "thing", or more simplistically, to put into action or service; to expend or consume; to carry our purpose or action by means of utilization.

While debates amongst scholars continue to explore the artistic and intrinsic value of pornography, in my professional opinion Michael Rea's proposed conditions are the most applicable to this case - pornography is for "use"; a commodity. As such, I have evaluated this collection based on it's current monetary value; i.e. the cost of replacement for the purpose of consumption, in today's market.

These come in two forms; DVD and online download. Preference has been given to DVD when available and dependent on each online source at the time of this report, and based on the assumption that the plaintiff purchased the original items in either VHS or DVD format, and has preference for this medium.

## METHODOLOGY

In determining the value of this collection, I considered the 4 following criteria;

- Current cost

  This criterion is divided into two parts. Is the film available in either DVD or digital (streaming) format? If so, preference was given to DVD format, as it appears the plaintiff purchased the video in either DVD or VHS format, as mentioned above.

- Current availability in the marketplace

  The second criterion determines whether or not the film is still available in the marketplace for purchase.

- Initial distribution volume

  The third criterion assesses if the initial distribution was of a mainstream nature (a "standard" release - thousands of copies distributed in adult retail chains or through mail order in the marketplace), or in a niche market (small number of copies released into the marketplace) or custom (one-of-a-kind film produced for the plaintiff alone)

- Porn industry-determined intrinsic value

  The fourth criterion considers what was relevant to the adult film industry at the time of production. Is there a performer with mainstream crossover? Did the producer/director win several awards in the industry? In the case of this valuation,

the least amount of weight has been given to this criterion.

RESEARCH TOOLS (EXHIBIT 5)

Due to increased availability of data (studio, year of production, etc), multiple online databases / websites were used to determine the previous 4 criteria. Effort was made to eliminate any duplicates with Exhibit 6.

- www.adultdvdempire.com (predominantly mainstream releases)

- www.jeedoo.com (Foreign, mainstream and fetish releases)

- www.hightide-video.com (fetish and unusual releases)

- www.kompoz2.com (mainstream reference)

- www.xhamster.com (mainstream and camming releases)

- www.adultempire.com (mainstream and some fetish releases)

- www.adultfilmdatabase.com (mostly mainstream releases dating back to the mid 70's)

- www.adultdvdmarketplace.com (mostly mainstream releases)

- www.iafd.com (adult film database and documentary website)

- www.ebay.com (online marketplace)

- www.hotmovies.com (mainstream releases)

- www.tubepornclassic.com (classic adult film marketplace)

- www.excaliburfilms.com (misc adult film marketplace)

- www.pornhub.com (tube site)

- www.youporn.com (tube site)

- www.diabolikdvd.com (misc film release marketplace)

- www.popcorn.com (misc film release marketplace)

- www.cduniverse.com (mainstream adult film marketplace)

- www.filesmonster.vip (misc film release marketplace)

- www.imdb.com (mainstream hollywood and film catalog website)

- www.gamelink.com (streaming marketplace)

- www.globaldatabase.ecpat.org (reference)

- www.aebn.com (mainstream adult streaming marketplace)

- www.vintage-erotic.net (classic adult marketplace)

- www.sugarinstant.com (streaming marketplace)

- www.adultfilmcentral.com (adult film marketplace)

- www.hentaiyes.com (manga and hentai adult marketplace)

    A differentiation in valuation has been considered, when the items were either

discontinued, not found, or were unable to be valuated, in the following five areas:

1.  Mainstream materials. When a mainstream title was found but not available for sale
     (discontinued), and did not have any defining features (a celebrity name, a stand
     alone significant value), the replacement cost was averaged among the most common
     replacement costs. The averages of 89.99, 69.99, 29.99, 19.95, 14.95, 9.99, 6.99, 18,
     59.99, 39.99 (the most common costs for the films listed, please refer to Exhibit B - 5
     spreadsheet) is 35.983, which was rounded to 36.

2.  Niche materials. Niche materials are defined by content. Beyond mainstream sexual
     content (in this case, heterosexual activity) niche materials are defined by; A.
     paraphilia aspects, such as an attention to feet, or urination, or lingerie (for example),
     and this may have a higher (or lower) cost. Paraphilia (previously known as sexual
     perversion and sexual deviation) is the experience of intense sexual arousal to atypical
     objects, situations, fantasies, behaviors, or individuals, and B. reduced or limited
     release into the marketplace. No consensus has been found for any precise border
     between unusual sexual interests and paraphilic ones. The averages of 89.99, 69.99,
     29.99, 19.95, 14.95, 9.99, 6.99, 18, 59.99, 39.99 (the most common costs for the films
     listed, please refer to Exhibit B - 5 spreadsheet) is 35.983, which was rounded to 36,
     and applied to Niche materials.

3.  Custom material. Custom materials are defined by a singular, or one-of-a-kind production, generally produced for the viewer only, and for which the performer and viewer negotiate a cost for production.

4.  Non-Mainstream material. While films depicting animals and sexual activity are not defined as a prohibited form of speech (see United States vs. Stevens, 559 U.S. 460 (2010), it is beyond the scope of this appraisal to determine the value of these films.

5.  Vague or undefined titles/lack of studio or production information. While all titles were searched for and cross referenced based on studio or some word combination, some were not able to be located or identified.

As a result of increased data (studio, production date, etc), a wider spectrum of costs was found.

Based on the above 5 conditions, 47 films were unable to be evaluated. Total appraisal of the remaining 689 films: $15,349.96. Please refer to the spreadsheet (Exhibit B - Spreadsheet titled "Exhibit 5") for each film's replacement cost.

### RESEARCH TOOLS (EXHIBIT 6)

Due to the limited data (no studio or production date, etc), one large online database / website was used to determine the previous 4 criteria. Effort was made to eliminate any duplicates with Exhibit 5.

- www.adultdvdempire.com (predominantly mainstream releases)

  A differentiation in valuation has been considered, when the items were either discontinued, not found, or were unable to be valued, in the following five areas.

1. Mainstream materials. When a mainstream title was found but not available for sale (discontinued), and did not have any defining features (a celebrity name, a stand alone significant value), the replacement cost was averaged among the most common replacement costs. The averages of 29.99, 19.99, 14.99, 11.99, 9.99, 7.99, 5.59 (the most common costs for the films listed, please refer to Exhibit B - 6 spreadsheet) is 13.44, which was rounded to 14.

2. Niche materials. Niche materials are defined by content. Beyond mainstream sexual content (in this case, heterosexual activity) niche materials are defined by; A. paraphilia aspects, such as an attention to feet, or urination, or lingerie (for example), and this may have a higher (or lower) cost. Paraphilia (previously known as sexual perversion and sexual deviation) is the experience of intense sexual arousal to atypical objects, situations, fantasies, behaviors, or individuals, and B. reduced or limited release into the marketplace. No consensus has been found for any precise border between unusual sexual interests and paraphilic ones. The averages of 29.99, 19.99, 14.99, 11.99, 9.99, 7.99, 5.59 (the most common costs for the films listed, please refer to Exhibit B - 6 spreadsheet) is 13.44, which was rounded to 14, and applied to Niche materials.

3. Custom material. Custom materials are defined by a singular, or one-of-a-kind production, generally produced for the viewer only, and for which the performer and viewer negotiate a cost for production.

4. Non-Mainstream material. While films depicting animals and sexual activity are not defined as a prohibited form of speech (see United States vs. Stevens, 559 U.S. 460 (2010), it is beyond the scope of this appraisal to determine the value of these films.

5. Vague or undefined titles/lack of studio or production information. While all titles were searched for and cross referenced based on title or some word combination, some were not able to be located or identified, or produced multiple results.

As a result of limiting data (a lack of studio, production date, etc), a smaller spectrum of costs was found, and largely available in download format.

Based on the above 5 conditions, 60 films were unable to be valued. Total appraisal of the remaining 1493 films: $15,094.98. Please refer to the spreadsheet (Exhibit C - Spreadsheet titled "Exhibit 6") for each film's replacement cost. A preference was given to DVD media when available, but generally was available in download format as of this report.

Titles that could be valued from both Exhibit 5 and Exhibit 6 totalled $30,441.54. While there could be duplicates from either Exhibits still remaining in this total, in my professional opinion such duplicates make a difference of perhaps + or - $3000.00.

## LIMITING CONDITIONS

This appraisal report is made subject to the following limiting conditions:

1.  The opinions of value reported are valid only for the effective date of the appraisal.

2.  The appraisal is valid only for intended use, intended users, and type of value stated in the report.

3.  This appraisal is valid only in its entirety and is invalid if any part of the report is missing or incomplete.

4.  This appraisal report is confidential and intended to be used only by the client and the stated intended users. No confidential part of this report, including the value conclusions and the identity of the appraiser, shall be disseminated to the public through advertising, news, sales, public relations or other media without the prior written consent of the appraiser.

5.  Delivery of this report to the client includes testimony in the court action. Once testimony has been provided, all contractual obligations will have been met.

## CERTIFICATION

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.

- I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- My engagement in this assignment was not contingent upon developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon or reporting of the predetermined value or direction in value that favors the cause of the client, the

amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- Research assistance for the appraisal was provided by Mircalla McNeely and David Shindel, but the value opinion is entirely my own.

## QUALIFICATIONS

I hold a Doctorate degree in Human Sexuality (D.H.S.)  and a Ph.D. in Human Sexuality with an emphasis on Clinical Sexology. My research focused on (and continues to focus on) unusual and paraphilic sexualities, in particular, paraphilic (or "extreme") pornography. I have led research projects on pornography, including my most recent effort in assessing the attitudes of Erotic Heritage Museum guests towards pornography. I have co-authored or authored several papers and articles on pornography and porn use. I am also the Executive Director of the Erotic Heritage Museum; the only Museum to include, and research, pornography as a part of its ongoing projects and exhibits.

References

1. Patton, C., Queer Diasporas, Duke University Press, 2000

2. Rea, Michael C. (2001) "What is Pornography?"  Nous 35 (1): 118 - 45.

3. Soucy, Patricia C. and Smyth, Janella N., Eds. *The Appraisal of Personal Property: Principles, Theories, and Practice Methods for the Professional Appraiser.* Washington. D.C.: The American Society of Appraisers, 1994, p.19

4. Wyatt, R.B. The Emergence of a Digital Cinema. *Computers and the Humanities* 33, 365–381 (1999).